OPINION
{¶ 1} This is an accelerated calendar case, submitted to this court on the record and the briefs of the parties. Appellant, Michael A. Calori, appeals the judgment entered by the Ravenna Division of the Portage County Municipal Court. The trial court denied Calori's motion to suppress evidence.
 {¶ 2} On June 10, 2005, at about 3:25 a.m., Sergeant Darin Powers of the Streetsboro Police Department was on routine patrol. He was traveling eastbound on State Route 14. As he drove past the Taco Bell restaurant, he noticed a vehicle parked by the speaker for the drive-thru window. He testified that this was abnormal, since the restaurant was closed and all of its lights were off. He believed the restaurant closed at 2:00 a.m. that morning.
 {¶ 3} Sergeant Powers turned his vehicle around to investigate the situation. By this time, the vehicle had exited the Taco Bell parking lot and was traveling west on State Route 14. Sergeant Powers caught up to the vehicle near the intersection of State Route 14 and State Route 303. Sergeant Powers activated his dashboard video camera and recorded the vehicle's movements. State Route 14 in this area is a five-lane street in a business district, with two westbound lanes, two eastbound lanes, and a center turn lane. The vehicle was traveling in the leftmost westbound lane and, on multiple occasions, briefly crossed the line dividing the westbound lane and the center lane.
 {¶ 4} As a result of the driving infractions, Sergeant Powers initiated a traffic stop. Calori was driving the vehicle. Calori was arrested and charged with operating a vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19, and a marked lanes violation, as prohibited by R.C. 4511.33.
 {¶ 5} Calori filed a motion to suppress the evidence resulting from his stop. A suppression hearing was held. Sergeant Powers was the only witness to testify at the hearing. He testified that Calori crossed the line three times. In addition, the videotape from the dashboard camera was admitted as an exhibit. Following the hearing, the trial court denied Calori's motion to suppress.
 {¶ 6} Calori filed a motion for findings of fact and conclusions of law. The trial court did not rule on this motion.
 {¶ 7} Calori pled no contest to the OVI charge. At the request of the state, the marked lanes charge was dismissed. Calori was sentenced to 180 days in jail and fined $1,000, with 174 days of the jail sentence and $750 of the fine suspended. His sentence was stayed pending appeal.
 {¶ 8} Calori raises two assignments of error. His first assignment of error is:
 {¶ 9} "The trial court erred to the prejudice of appellant by incorporating facts into its ruling that were not presented as evidence."
 {¶ 10} Calori argues that the trial court erred in its judgment entry denying his motion to suppress. He claims the trial court erred by finding that his "rate of speed" contributed to the circumstances giving Sergeant Powers probable cause to stop his vehicle. We agree.
 {¶ 11} At the suppression hearing, Sergeant Powers did not testify regarding Calori's speed. The only evidence pertaining to the speed of Calori's vehicle was the videotape. The videotape does not indicate Calori was exceeding the speed limit. On one occasion, Calori was traveling very slowly, but it is clear that a vehicle in front of him was also traveling slowly.
 {¶ 12} The trial court erred by finding that Calori's rate of speed was a basis for Sergeant Powers to initiate a traffic stop. There was no evidence that Calori was traveling in excess of the speed limit. Further, when Calori was traveling slowly, there was a rational basis for this activity, as his path was blocked by another, slow-traveling vehicle.
 {¶ 13} While the trial court erred by finding Calori's rate of speed provided a basis for Sergeant Powers to stop the vehicle, we conclude this error is harmless.[1] As noted in our analysis of Calori's second assignment of error, the marked lane violations, standing alone, gave Sergeant Powers sufficient probable cause to effectuate a traffic stop.
 {¶ 14} Calori's first assignment of error is without merit.
 {¶ 15} Calori's second assignment of error is:
 {¶ 16} "The trial court erred to the prejudice of appellant by denying his motion to suppress."
 {¶ 17} "Appellate review of a motion to suppress presents a mixed question of law and fact."[2] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[3] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[4]
 {¶ 18} Several appellate decisions hold a "de minimis" marked lane violation is not a ground for an officer to initiate a traffic stop.[5] However, for the reasons that follow, we hold that an officer may stop a motor vehicle after witnessing a traffic violation, including a marked lane violation.
 {¶ 19} Regarding "weaving" and marked lane violations, there are two legitimate bases for an officer to initiate a traffic stop. The first is that, pursuant to Terry v. Ohio, the officer has reasonable suspicion that a crime is occurring.[6] The second is that the officer has probable cause to believe that a traffic violation has occurred.[7] In many instances when a vehicle travels outside its lane, the officer could stop the vehicle based on probable cause that a traffic violation has occurred (a marked lane violation); and based on reasonable suspicion that the driver is operating the vehicle under the influence of alcohol. However, the stop does not violate the Fourth Amendment so long as the circumstances meet one of the above standards.
 {¶ 20} "The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent."[8] This standard applies to individuals driving motor vehicles.[9] Finally, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."[10]
These circumstances are to be "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."[11]
 {¶ 21} Sufficiently "erratic" driving is justification to support aTerry stop based on the officer's reasonable suspicion that the driver is operating the vehicle under the influence of alcohol.[12]
Significant weaving within one's lane can rise to the level of erratic driving and reasonable suspicion that the driver of the vehicle is impaired to
justify a stop, even if there are no other traffic violations.[13]
On the other hand, a "de minimis" marked lane violation, standing alone, does not necessarily rise to the level of reasonable suspicion that the operator of the vehicle is impaired.[14]
 {¶ 22} However, the marked lane violation, standing alone, does constitute probable cause for the officer to stop the vehicle to investigate the lane violation itself. The Supreme Court of Ohio has held:
 {¶ 23} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity."[15]
 {¶ 24} In interpreting Dayton v. Erickson, this court has held that when a police officer witnesses a minor traffic violation, he may stop the vehicle for the purpose of issuing a traffic citation.[16]
Thereafter, the officer may investigate the driver of the vehicle for driving under the influence if the officer develops reasonable suspicion that the driver of the vehicle may be intoxicated.[17]
 {¶ 25} In this matter, the trial court found Calori's "rate of speed and two or more occasions of driving left of center constituted sufficient cause to stop" Calori's vehicle. As we have held, the trial court erred by making its finding regarding the rate of speed. Thus, we will not consider that finding in this analysis. The trial court found that Calori's vehicle went left of center. However, State Route 14 is a five-lane highway with a center turn lane. Therefore, Calori technically did not go left of center.[18] Moreover, Calori was charged with a marked lane violation, pursuant to R.C. 4511.33. Finally, Sergeant Powers' testimony, as well as the videotape, supports a finding that Calori's vehicle crossed the line designating his lane of travel. In light of these circumstances, we will construe the trial court's finding as Calori committing a marked lane violation. In addition, the trial court found that Sergeant Powers had "sufficient cause" to stop Calori's vehicle. We will construe the trial court's finding to indicate that Sergeant Powers had sufficient probable cause to stop Calori's vehicle. Finally, we note the trial court did not engage in a reasonable suspicion analysis. Thus, we will likewise limit our review to a probable cause analysis.
 {¶ 26} Calori was charged with violating Ohio's marked lane statute, which provides:
 {¶ 27} "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 28} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."[19]
 {¶ 29} Sergeant Powers had probable cause to stop Calori's vehicle for a violation of the marked lane statute. Calori's vehicle left its lane of travel. Sergeant Powers testified that there were no objects in the roadway that would have justified Calori driving outside his marked lane.
 {¶ 30} It could be argued that the "as nearly as is practicable" language in the statute allows for discretion on the part of the driver as to when they must remain in their lane. We disagree. The Seventh District recently addressed this issue and noted:
 {¶ 31} "The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside of the lane. Nor, we are quite certain, did the legislature intend this statute to punish a motorist for traveling outside of their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists theoption of staying within the lane at their choosing. Common sense dictates the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable."[20]
 {¶ 32} We agree with the Seventh District's analysis. Essentially, the "as nearly as is practicable" language is a defense to the statute. If a driver is stopped, he can explain to the officer that he went out of his lane because there was a (dog, child, hubcap, etc.) in the road. If the officer believes the story, he can let the driver proceed
20. (Emphasis in original.) State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053, at ¶ 43. without issuing a citation. If not, the driver can challenge the citation in court. However, even when there is a legitimate reason for a driver to stray from his lane, it does not eliminate the officer's authority to effectuate a stop, especially when the officer is unaware of that reason.
 {¶ 33} Sergeant Powers had sufficient probable cause that Calori committed a marked lane violation to effectuate a traffic stop for the purposes of issuing a citation.
 {¶ 34} Calori's second assignment of error is without merit.
 {¶ 35} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs in judgment only,
COLLEEN MARY O'TOOLE, J., dissents.
[1] Crim.R. 52(A).
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.
[3] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[4] Id., citing State v. McNamara (1997), 124 Ohio App.3d 706.
[5] See cases cited in State v. Haley (Mar. 16, 2001), 11th Dist. No. 2000-P-0021, 2001 Ohio App. LEXIS 1242, at *4-5.
[6] Terry v. Ohio (1968), 392 U.S. 1, 21. See, also, State v.Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, at ¶ 35.
[7] Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus.
[8] State v. Gedeon (1992), 81 Ohio App.3d 617, 618, citing Terry v.Ohio, supra.
[9] Id., citing State v. Heinrichs (1988), 46 Ohio App.3d 63.
[10] State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
[11] State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
[12] Mentor v. Phillips (Dec. 29, 2000), 11th Dist. No. 99-L-119, 2000 Ohio App. LEXIS 6207, at *6, quoting State v. Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649.
[13] See State v. Weber, 11th Dist. No. 2003-L-090, 2004-Ohio-2444, at ¶ 15.
[14] See, e.g., State v. Haley, supra, at *4-5.
[15] Dayton v. Erickson, 76 Ohio St.3d 3, syllabus. See, also, e.g.,Whren v. United States (1996), 517 U.S. 806, 812-813.
[16] State v. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800, at *8-9, quoting State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at *6-7. See, also,Eastlake v. Reithmann, 11th Dist. Nos. 2003-L-076 and 2003-L-079,2005-Ohio-137, at ¶ 25.
[17] Id.
[18] See R.C. 4511.25.
[19] R.C. 4511.33.
[20] (Emphasis in original.) State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053, at ¶ 43.