[Cite as *State v. Freshwater*, 2019-Ohio-2968.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2018-L-117** |
| JOSHUA C. FRESHWATER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 2018 CR 000012.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1}   Appellant, Joshua C. Freshwater, appeals from the judgment entry of sentence issued by the Lake County Court of Common Pleas on October 4, 2018, following a jury trial.  Appellant was found guilty of trafficking in marihuana, a fourth-degree felony in violation of R.C. 2925.03(A)(2), and possessing criminal tools, a fifth-degree felony in violation of R.C. 2923.24, both of which included forfeiture specifications for currency and contraband/instrumentalities.  The charges stem from a traffic stop that

resulted in the search of appellant's rental vehicle, the seizure of contraband from the vehicle, and the seizure of a large amount of cash from appellant's person. The trial court sentenced appellant to two concurrent eleven-month prison terms.

{¶2} On appeal, appellant asserts the following assignments of error for our review:

> [1.] The trial court erred when it permitted an expert to testify as to the ultimate issue to be decided by the jury, in violation of the rights to due process and fair trial per the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.
>
> [2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
>
> [3.] The trial court erred when it overruled the defendant-appellant's motion to suppress where the officer had no specific and articulable suspicion upon which to base his stop of the defendant-appellant's vehicle, in violation of the defendant-appellant's right to be free from unreasonable search and seizure as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution.

For the reasons that follow, appellant's assignments of error are without merit, and the trial court's judgment is affirmed.

{¶3} We first consider appellant's third assignment of error, in which he argues the trial court erred in denying his motion to suppress evidence.

{¶4} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "Consequently, an appellate court

2

must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982) and *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶5} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees an individual's right to be free from unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. Police action of stopping an automobile and detaining its occupant is a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648 (1979), paragraph two of the syllabus. Thus, an automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996).

{¶6} A traffic stop is not "unreasonable" when it is premised upon either an articulable reasonable suspicion of criminal activity or probable cause to believe a crime was committed. *State v. Calori*, 11th Dist. Portage No. 2006-P-0007, 2007-Ohio-214, ¶19, citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968), *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶35, and *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus. *See also State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶23 ("an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop"). This determination "requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer." *Erickson*, *supra*, at 6 (citation omitted).

**{¶7}** An officer's observation of a traffic violation provides probable cause to stop a vehicle. *See Mays*, *supra*, at ¶24, and *State v. Eggleston*, 11th Dist. Trumbull No. 2014-T-0068, 2015-Ohio-958, ¶20. "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Erickson*, *supra*, at syllabus, applying and following *United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir.1993).

**{¶8}** At the suppression hearing, the arresting officer, Don Swindell, testified that appellant was stopped for three traffic violations: (1) a marked lanes violation (R.C. 4511.33(A)); (2) failure to use a turn signal (R.C. 4511.39(A)); and (3) an obstructed license plate (R.C. 4503.21)). The officer's dashcam video was also introduced at the hearing. Officer Swindell testified that he observed appellant make a right-hand turn in front of him, from a mall parking lot onto the street, and then observed appellant's vehicle briefly cross over the white-dotted line into the other lane. Appellant signaled and made a right-hand turn onto a side street. The officer then observed appellant fail to signal a right-hand turn into a housing development, which was captured on the dashcam video. As the officer got closer, he noticed appellant's license plate was obstructed. The officer activated his overhead lights and stopped appellant's vehicle. The video reveals that appellant's license plate was partially obscured by snow at the time of the stop.

**{¶9}** The trial court concluded there was probable cause for the traffic stop and made the following factual findings:

4

The law is very clear that a traffic violation, even a minor traffic violation, is sufficient to provide a basis or justification for stopping a motor vehicle. And that's what we have here in this case.

The Officer testified regarding the marked lane violation. He testified that the marked lane violation occurred shortly, almost immediately after the vehicle pulled out of the mall parking lot. * * * [T]he Officer said he made the turn straight and then went over.

There is nothing in [the dashcam video] that disproves that. The Officer observed that and that's when he made that observation and there's nothing to again, as I said, the video doesn't show that that did not occur.

Secondly, and even more importantly, is there is clearly a turn [signal] violation in this case. While the Defendant turns his signal on to turn right from Mentor Avenue onto Lucretia, that is not a, as it was characterized, a continuous right-hand turn or an immediate right-hand turn when he turns onto Lucretia. There is a portion of roadway there where you go straight. Clearly when you would have turned right there, the signal would have turned off and you do go straightforward [sic]. It's not a continuous right-hand turn signal and the Defendant was required to turn * * * his turn signal on to turn right, and he pulled in the parking lot and he didn't do it. Albeit a minor violation, it's still a traffic violation which would provide the basis for permitting the officer to stop the motor vehicle.

And based on that, the Court finds that the officer again did have a basis for stopping the motor vehicle.

{¶10} On appeal, appellant asserts the officer had no specific and articulable reason to conduct the traffic stop because the dashcam video fails to demonstrate a marked lanes violation occurred and there was no testimony that appellant was not driving as safely as practicable due to snow piled along the side of the road. The officer did testify, however, that the road conditions did not prevent appellant from staying within his lane. Further, even without a marked lanes violation, the trial court found that appellant failed to utilize a turn signal. This finding is supported by competent and credible evidence and, in and of itself, provided the officer with probable cause to initiate the traffic stop.

5

{¶11} Accordingly, as the traffic stop was not in violation of appellant's Fourth Amendment rights, it was not error for the trial court to deny appellant's motion to suppress the evidence seized as a result of the traffic stop.

{¶12} Appellant's third assignment of error is without merit.

{¶13} In his first assignment of error, appellant argues the trial court committed reversible error when it permitted Sergeant Brad Kemp with the Lake County Narcotics Agency to testify, over objection, as to appellant's intent to sell marihuana. Appellant asserts the expert's testimony deprived the jury of its right to determine the ultimate issue in the case.

{¶14} Appellant specifically takes issue with Sergeant Kemp's testimony that it was his opinion, based solely on the packaging of the seized marihuana, that the marihuana was intended to be sold. Appellant argues this opinion testimony regarding his "intent" was improper because Sergeant Kemp had already testified at length regarding the packaging of marihuana for sale, the "weight" of marihuana for sale, the role that rental cars play in drug trafficking, and that cash is used to purchase marihuana.

{¶15} At the time of trial, Sergeant Kemp had been a narcotics officer for 23 years. He testified that about 25 percent of his work involves marihuana. Sergeant Kemp provided a thorough explanation of the various ways in which marihuana is packaged and sold, including the weights and prices of packages typically sold for either personal use or resale, as well as the profit that can be made by a person trafficking in marihuana. He testified that rental cars are sometimes used to transport drugs. Sergeant Kemp also explained that when drug dealers are arrested, they are often found with packaging material, paraphernalia, large sums of cash, and prepackaged drugs.

{¶16} Sergeant Kemp testified that he had reviewed the police report and the crime laboratory report regarding the evidence taken from appellant and his rental vehicle. He testified that the amount of marihuana and the way it was packaged is "indicative of drug trafficking." The prosecutor asked if he meant that it was "intended for sale," to which Sergeant Kemp replied, "yes." He estimated that the purchase price for the marihuana found in appellant's possession was between $1,300.00 and $2,000.00. Based on his training and experience, the sergeant stated his "ultimate conclusion based on all of the bags here is that it's indicative of drug trafficking as well as some personal use."

{¶17} "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶16; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶18} "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. "While testimony on an ultimate issue to be decided by the trier of fact is not *per se* inadmissible in Ohio, it is within the sound discretion of a trial court to refuse to admit the testimony of an expert witness on an ultimate issue where such testimony is not essential to the jury's understanding of the issue and the jury is capable of coming to a correct conclusion without it." *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph three of the syllabus.

7

{¶19} In other words, Evid.R. 704 must be read in conjunction with Evid.R. 702. *State v. Poling*, 11th Dist. Trumbull No. 88-T-4112, 1991 WL 84229, *10 (May 17, 1991). Evid.R. 702 permits a witness to testify as an expert in the following circumstances:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

{¶20} Accordingly, "'[e]xpert opinion testimony is admissible as to an ultimate fact without infringing [upon] the function of the jury, if the determination of such ultimate fact requires the application of expert knowledge not within the common knowledge of the jury.'" *Poling*, *supra*, at *10, quoting *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77 (1967), paragraph three of the syllabus; *see also State v. Struble*, 11th Dist. Lake No. 2016-L-108, 2017-Ohio-9326, ¶32 ("expert testimony is helpful to the trier of fact when it pertains to a point that is outside the trier's experience, knowledge, or comprehension").

{¶21} Sergeant Kemp's testimony may have assisted the jury, as it pertained to matters not within the common experience, knowledge, or comprehension of the jury. Without his testimony, the jury would not necessarily know how marihuana is typically packaged or weighed for sale or resale, as opposed to personal use. The trial court, therefore, did not abuse its discretion by permitting Sergeant Kemp to offer his expert opinion that the evidence supported a conclusion that the marihuana was intended for sale. *See Struble, supra*, at ¶33.

{¶22} Appellant's first assignment of error is without merit.

**{¶23}** In his second assignment of error, appellant argues his conviction for trafficking in marihuana is against the manifest weight of the evidence.

**{¶24}** The state was required to prove, beyond a reasonable doubt, that appellant violated R.C. 2925.03(A)(2), which provides:

> (A) No person shall knowingly do any of the following:  * * *
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

**{¶25}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) (emphasis sic), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony."  *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

9

{¶26} Appellant asserts the state failed to prove the marihuana in his possession was intended for sale. Appellant admitted the marihuana was his, but he maintained both at the scene and at trial that it was for personal use only. At trial, appellant detailed his medical conditions that the use of marihuana helps to relieve. There was, however, physical evidence and testimony presented that supports the jury's conclusion that the marihuana was intended for sale. Officer Swindell, who made the arrest, testified that he believed appellant was preparing the marihuana for sale based on finding two cell phones, multiple plastic bags of marihuana, and mason jars in the rental vehicle, as well as a large amount of cash on appellant's person. We note, however, that Sergeant Kemp, the narcotics officer, did not find the mason jars or cell phones necessarily relevant to the sale of marihuana.

{¶27} Appellant also argues that the officers did not witness a sale and that none of the bags of marihuana were consistent in weight, which weighs against his trafficking conviction. However, Sergeant Kemp, testified from his training and experience that the amounts of marihuana in each bag were similar enough, based on how marihuana is typically weighed, to indicate that it was packaged for sale. Additionally, Sergeant Kemp testified that the total amount of marihuana in appellant's possession was the equivalent of approximately 540 marihuana cigarettes, or "joints."

{¶28} "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). The jury is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Thomas*, 11th Dist. Lake No. 2004-L-176, 2005-Ohio-6570, ¶29.

10

"Moreover, if the evidence admits to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." *Id.* "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*, *supra*, at 175.

{¶29} This is not such a case. The jury was free to believe all, some, or none of appellant's testimony, and it clearly found the officers' testimony more credible. We conclude that the jury did not lose its way or create a manifest miscarriage of justice in finding appellant guilty of trafficking in marihuana.

{¶30} Appellant's third assignment of error is without merit.

{¶31} The judgment of the Lake County Court of Common Pleas is hereby affirmed.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.