[Cite as *State v. Ross*, 2020-Ohio-4109.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-L-013** |
| STEVEN A. ROSS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2019 CR 000454.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp,* Lake County Public Defender, and *Melissa A. Blake,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Steven A. Ross, appeals from the judgment of the Lake County Court of Common Pleas. At issue is whether the trial court erred in denying his motion to suppress evidence; whether counsel was ineffective for failing to challenge a search warrant; and whether the trial court erred in imposing consecutive sentences for appellant's plea of no contest to four counts of felony-five voyeurism. We affirm.

{¶2} On October 15, 2018, the Chief Investigator for the Lake County Prosecutor's Office, Joseph Matteo, was contacted by Ja.S., who reported discovering evidence that appellant, her ex-boyfriend of some ten years, had secretly videotaped her minor daughter, Jo.S., in a state of nudity. Ja.S. stated she found a thumb drive in her home, which, among various files belonging to appellant, included a photograph of Jo.S. sunbathing. She became suspicious; meanwhile, Ja.S. was having difficulty with a laptop she owned and had a friend, Mr. Lewis Sharaba, address the problems. Ja.S. also asked Mr. Sharaba to examine the thumb drive; he did and found various deleted files, which he was able to retrieve and transfer to a second thumb drive, which was his property.

{¶3} Ja.S advised Investigator Matteo that she viewed the videos transferred by Mr. Sharaba and observed appellant setting up and hiding a recording device in their bathroom; Jo.S. entering the bathroom and undressing for a shower. On October 24, 2018, Ja.S. met with the investigator and provided him with a hard-drive, which belonged to appellant, as well as the original thumb drive and the second thumb drive which contained the retrieved videos. After viewing the videos, Investigator Matteo confirmed Ja.S.' claims.

{¶4} Several days later, the investigator turned the items over to Kirkland Police Department; after obtaining statements from Ja.S. and Mr. Sharaba, Kirtland officers acquired a search warrant authorizing the search of the original thumb drive and the hard drive. After securing the warrant, the evidence was submitted to forensic examiner Rick Warner; Mr. Warner was able to recover four video files from appellant's

thumb drive which depicted appellant recording Jo.S. in a state of nudity when she was between the ages of 13 and 16 years old.

{¶5} Appellant was indicted on four counts of voyeurism, felonies of the fifth degree, in violation of R.C. 2907.08(C). He waived his right to be present at arraignment and the trial court entered pleas of "not guilty" on his behalf. A motion to suppress evidence was filed seeking to exclude all evidence that formed the basis of the charges in the indictment. After a hearing, the motion was overruled. Appellant then withdrew his pleas of "not guilty" and entered pleas of "no contest" to the charges in the indictment. Prior to sentencing, appellant violated the conditions of his bond by testing positive for cocaine. Bond was revoked, a warrant was issued for his arrest, and he was later apprehended in the state of Georgia. Appellant was eventually sentenced to nine months imprisonment on each count, to be served consecutively to one another, for an aggregate term of 36 months. Appellant was additionally classified a Tier II Sex Offender and notified of the registration requirements. This appeal follows.

{¶6} For his first assignment of error, appellant asserts:

{¶7} "The trial court erred by denying the defendant-appellant's motion to suppress in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution."

{¶8} Appellant asserts that the trial court erred in denying his motion to suppress because, in his view, the evidence was obtained from a warrantless search in violation of the Fourth Amendment. Specifically, he maintains his constitutional rights were violated when the investigator and Kirtland police viewed the copy of the videos

3

transferred from the original by Mr. Sharaba, without a warrant and without his consent. He asserts the content of the material transferred was his property in which he had a reasonable expectation of privacy. We do not agree.

{¶9} "'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.'" *State v. Freshwater*, 11th Dist. Lake No. 2018-L-117, 2019-Ohio-2968, ¶4, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. "'Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Burnside, supra,* citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).

{¶10} The Fourth Amendment's proscriptions on searches and seizures are inapplicable to private action. *United States v. Jacobsen*, 466 U.S. 109, 113-14, (1984). The protections of the Fourth Amendment are "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Id.* at 113 quoting *Walter v. United States,* 447 U.S. 649, 662 (1980) (BLACKMUN, J., dissenting). Further, "[o]nce frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Id.* at 117. Rather, the Fourth Amendment "is implicated only if the authorities use information with respect to which the expectation of

4

privacy has not already been frustrated." *Id.* Accordingly, any "additional invasions of * * * privacy by the government agent must be tested by the degree to which they exceed[ ] the scope of the private search." *Id.* at 115.

{¶11} In this case, the frustration of appellant's original (arguable) expectation of privacy, occurred when Ja.S. and Mr. Sharaba viewed the videos subsequent to Mr. Sharaba's retrieval of the deleted files.[1] Neither Investigator Matteo nor the Kirtland police exceeded the scope of the private searches of Ja.S. or Mr. Sharaba. The pre-warrant governmental searches included only the videos transferred by Mr. Sharaba, a private party, onto his private property, a second thumb drive, which had been previously viewed by private parties. Thus, appellant's argument must fail for two reasons: (1) the evidence was submitted to authorities by a private party not acting as an agent or extension of the government and (2) the pre-warrant evidence viewed by police did not exceed that viewed by the private parties and thus any reasonable expectation of privacy in that evidence had been frustrated.

{¶12} Moreover, even if Ja.S. or Mr. Sharaba engaged in some arguable illicit conduct (and there is nothing in the record to suggest this occurred), the exclusionary rule was designed to remedy unconstitutional conduct by *state actors. See Michigan v. Tucker*, 417 U.S. 433, 446 (1974), citing United States v. Calandra, 414 U.S. 338, 347 (1974). "The rule is calculated to prevent, not to repair. Its purpose is to deter - to compel respect for the constitutional guaranty in the only effectively available way - by removing the incentive to disregard it." *Id.* citing *Elkins v. United States*, 364 U.S. 206,

---

1. We parenthetically note that appellant's expectation of privacy in the thumb drive was "arguable" because the state asserted, at the hearing, the thumb drive was legally abandoned due to appellant's failure to retrieve the item after moving out and, therefore, he had no reasonable expectation of privacy in the contents he left behind in the residence. Because we decide this matter on different grounds, we need not address the legal merit to the state's abandonment argument.

217 (1960). The United States Supreme Court has flatly stated that the Fourth Amendment's "origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies." *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). Accordingly, the remedy of exclusion would not apply in this instance because the pre-warrant evidence originated with and was submitted to authorities by a private party.

{¶13} Appellant's first assignment of error lacks merit.

{¶14} Appellant's second assignment of error provides:

{¶15} "The defendant-appellant's constitutional rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel."

{¶16} Under his second assignment of error, appellant asserts trial counsel was ineffective for failing to challenge the validity of the search warrant obtained by law enforcement authorizing the search of his electronic storage devices. Appellant specifically contends that Ja.S. was a biased party in the investigation and consequently, if the evidence gleaned from the second thumb drive were disregarded, the trial court could not rely upon her allegations to support probable cause to issue the warrant.

{¶17} Initially, counsel challenged the evidence obtained not only from the second thumb drive, but also that obtained from the first thumb drive; the latter, however, was obtained *after* a warrant was issued. While counsel did not directly challenge the sufficiency of the search warrant, his motion indirectly touches on the

6

point. Moreover, after the hearing, the trial court made the following observations from the bench:

> {¶18} In this case then the police reviewed and looked at the files that were on thumb drive two, which is the duplication, a copy of the files that were on thumb drive one. And that added, provided additional probable cause in the view of the officers, investigators, for the issuance of the search warrant for thumb drive one which is all we're concerned about here. But even if we didn't have that, there was sufficient probable cause for the issuance of a search warrant for thumb drive one.

{¶19} Because counsel challenged all evidence and the trial court ultimately ruled there was sufficient probable cause (regardless of whether the materials from thumb-drive two was not considered), the validity of the warrant was a matter the court considered. In this respect, counsel cannot be deemed ineffective for failing to raise a point the court specifically addressed. We shall nevertheless address appellant's ineffectiveness argument.

{¶20} For appellant to succeed on his claim of ineffective assistance of counsel, he must show that (1) his counsel's performance was deficient, and (2) that he was prejudiced by his counsel's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). When considering whether counsel's performance was deficient, we presume his or her conduct was within the range of reasonable professional assistance. *Id.* at 142. To show prejudice, appellant must demonstrate a reasonable probability that the result of the trial would have been different, but for his counsel's errors. *Id.* at 143.

{¶21} Ordinarily, when considering whether a search warrant is premised upon probable cause, a magistrate or judge must "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a

7

fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). By contrast, in reviewing the sufficiency of probable cause of a search warrant, an appellate court must not substitute its judgment for that of the magistrate, but reviews the warrant "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," according "great deference to the magistrate's determination of probable cause," and resolving "doubtful or marginal cases * * * in favor of upholding the warrant." *George*, *supra*, at paragraph two of the syllabus.

{¶22} Probable cause means "less than evidence than would justify condemnation," so that only the "'probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Id.* at 329, quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969).

{¶23} In this matter, because counsel did not challenge the warrant, the affidavit upon which it was premised and issued is not in our record. Nevertheless, the affiant, Officer Cassia Phillips of the Kirkland Police Department offered testimony at the suppression hearing regarding her factual basis for seeking the warrant. In particular, she testified she received information regarding Ja.S' allegations as well as the original thumb drive, the second thumb drive which contained the retrieved material from the first, and the hard drive. She testified she viewed the videos on the second thumb drive with Jo.S. who confirmed the male in the videos was appellant and she was the minor female in the videos. After this meeting, Officer Phillips testified she forwarded all three

8

items to the forensic examiner, who requested a search warrant for the first thumb drive and the hard drive.

{¶24} Appellant's challenge to the search warrant is based upon Ja.S' purported bias as his ex-inamorata. Regardless of any bias Ja.S. may have harbored toward appellant, we need not speculate on the impact of these feelings because doing so would require this court to omit consideration of the video evidence we have already deemed admissible. Because we conclude the second thumb drive was neither searched nor seized by a governmental agent and appellant had no reasonable expectation of privacy in the same, it, unto itself, provided sufficient probable cause for the trial court to issue the warrant. Hence, appellant can show neither deficient performance nor prejudice for counsel's failure to challenge the sufficiency of probable cause supporting the trial court's issuance of the warrant.

{¶25} Appellant's second assignment of error lacks merit.

{¶26} For his third assigned error, appellant argues:

{¶27} "The trial court erred by sentencing the defendant-appellant to individual, prison terms of nine months on each count to be served consecutively, as the trial court's findings with respect to R.C. 2929.14 were unsupported by the record and thus contrary to law."

{¶28} Appellant does not argue the trial court failed to make the necessary statutory findings; rather, he challenges the basis of the trial court's findings supporting its imposition of consecutive sentences. We review consecutive sentences imposed pursuant to R.C. 2929.14(C)(4) under R.C. 2953.08(G)(2), which states:

9

{¶29} The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶30} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶31} (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶32} (b) That the sentence is otherwise contrary to law.

{¶33} Appellate courts "'may vacate or modify any sentence that is not clearly and convincingly contrary to law'" only when the appellate court clearly and convincingly finds that the record does not support the sentence. *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶8, quoting *Marcum, supra*.

{¶34} Further, R.C. 2929.14(C)(4) provides, in relevant part, as follows regarding consecutive felony sentences:

{¶35} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶36} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

10

{¶37} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶38} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4).

{¶39} At the sentencing hearing, the trial court made the following findings:

{¶40} The court * * * finds that consecutive service is necessary in this case to protect the public from future crime, and to punish the offender. It's not disproportionate to the seriousness of his conduct and to the danger he poses to the public and the court finds first that at least two of the multiple offenses were committed as a part of one or more courses of conduct and the harm that was caused by two or more of these multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as a part of any other courses of conduct adequately reflects the seriousness of his conduct and also his history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime.

{¶41} Again, when I talk about his history of criminal conduct, I recognize that there's no - - not a lengthy history. The defendant has two prior convictions and one of them is a disorderly conduct. But that other conviction is for the same conduct and I find that that history warrants consecutive sentence and quite frankly, there were four separate acts here. And that's something the court takes into consideration as well. Each of these are separate acts and they should be punished separately.

{¶42} Clearly, the trial court met its statutory burden of listing the findings justifying consecutive sentences. Furthermore, its explication regarding appellant's criminal history is sufficient to support its findings under R.C. 2929.14(C)(4)(c). Further, the trial court emphasized that it considered the statement of Jo.S., which provided an articulate and detailed account of the harm appellant's conduct caused her; the statement, accordingly, provided more than an adequate foundation to support the

11

court's R.C. 2929.14(C)(4)(a) finding. Appellant, however, takes issue with the court's finding that the sentences were not disproportionate to the danger he poses to the public; he further asserts consecutive sentences in his case demean the seriousness of other more violent crimes.

{¶43} With respect to the first point, as the court noted, he was convicted of four separate crimes. Moreover, prior to these offenses, appellant was convicted previously of voyeurism and committed the offenses while under sexual-offender-registration requirements. This demonstrates a definite pattern of perverse conduct of a sexual nature involving non-consensual victims (in this case, a minor). The trial court reasonably concluded that the imposition of consecutive sentences is not disproportionate to the danger he poses to the public.

{¶44} Regarding his second argument, appellant points out that the Second District's holding in *State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980. In *Overholser*, the Second District reversed a trial court's imposition of consecutive sentences, concluding that the sentence was inappropriate because it would "demean the seriousness of other more violent crimes and the harm to other victims." *Id.* at ¶32. The court noted that the appellant in that matter was convicted of five counts of gross-sexual imposition and received four years of imprisonment for each count, to be served consecutively. The court went on to note such a sentence would demean the seriousness of other more violent crimes, such as rape and murder. While we do not see the consideration highlighted in *Overholser* as necessarily improper, it does not accurately trace the statutory language of R.C. 2929.14(C). The statute does not require a court to find that consecutive sentences would demean the severity of

other, arguably worse or more violent crimes. Rather, it requires the trial court to find, in light of the surrounding facts, whether consecutive sentences are proportionate (or, alternatively, "not disproportionate") to the seriousness of the criminal conduct *in this case.*

{¶45} Under the circumstances, the court underscored that Jo.S. suffered serious psychological harm, that was catalogued in a statement authored by the victim herself. The court further highlighted the harm and seriousness of the criminal conduct was exacerbated by the victim's age and her relationship with appellant. Appellant stood in loco parentis and held a relationship of trust with Jo.S. which, the court emphasized, was used to commit the offenses. Given these factors, which are supported by the record, we conclude the trial court did not err when if found consecutive sentences were not disproportionate to the seriousness of appellant's conduct, i.e., the four clandestine recordings of a minor in a state of nudity. We therefore hold the trial court's imposition of four nine-month terms, to be served consecutively, was consistent with the record and not contrary to law.

{¶46} Appellant's final assignment of error is without merit.

{¶47} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.