[Cite as *State v. Millard*, 2024-Ohio-1342.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JENNIFER L. MILLARD,

        Defendant-Appellant.

CASE NO. 2023-P-0041

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 00508

---

**O P I N I O N**

Decided: April 9, 2024
Judgment: Affirmed

---

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Richard E. Hackerd*, 55 Public Square, Suite 2100, Cleveland, OH 44113 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Jennifer L. Millard ("Appellant"), appeals from her conviction for Aggravated Possession of Drugs and Possessing Drug Abuse Instruments from the Portage County Court of Common Pleas. For the following reasons, we affirm.

{¶2} On May 5, 2022, the Portage County Grand Jury returned a two-count indictment charging appellant with Aggravated Possession of Drugs, a felony of the fifth degree, in violation of R.C. 2925.11 ("Count One") and Possessing Drug Abuse Instruments, a misdemeanor of the second degree, in violation of R.C. 2925.12 ("Count Two").

{¶3} On May 17, 2022, appellant entered a plea of Not Guilty at arraignment on both charges and personal recognizance bond was set at $20,000 with the additional condition that appellant undergo random substance abuse testing.

{¶4} Appellant filed a motion to suppress and amended motion to suppress on January 13, 2023, and January 17, 2023, respectively. A second amended motion to suppress was filed on February 1, 2023. Appellant sought suppression of the following:

1. All evidence obtained as the result of the warrantless seizure and stop of Defendant and subsequent search of the vehicle;

2. Statements taken from or made by Defendant;

3. Any evidence or testimony that comes to light during direct or cross examination obtained by any act or omission which constitutes a violation of constitutional rights; and,

4. All evidence obtained as a result of the dog sniff and subsequent search.

{¶5} A suppression hearing was held on February 3, 2023. A number of stipulations were placed on the record prior to the hearing: (1) Deputy Kelly Moore ("Deputy Moore") is a certified peace officer and canine officer; (2) K-9 Cavo is certified in narcotics detection and current on all trainings; (3) the incident occurred on May 1, 2022, in Portage County Ohio; (4) appellant was the driver of the vehicle stopped; (5) Deputy Moore's cruiser has a dash cam that captured a video recording of the stop; (6) the dash cam video recording, introduced as State's Exhibit 1, is a true and accurate copy of the dash cam video from Deputy Moore's cruiser;[1] and (7) Deputy Moore was in uniform

_____

1. The parties did acknowledge that the timestamps on the video recording were inaccurate. Fifteen minutes and thirty-one seconds were played. The video was paused at timestamp 10:20.

Case No. 2023-P-0041

and in a marked cruiser working an appropriate shift when the incident occurred. Defense Exhibit A, a copy of Deputy Moore's report was also admitted.

{¶6} The following additional evidence was presented by way of testimony at the hearing:

{¶7} Deputy Moore testified that on May 1, 2022, she was working on I-76 near mile marker 39 located in Rootstown Township. She was parked perpendicular to the roadway while observing eastbound traffic. At approximately 11:54 in the morning, a black Ford Taurus X passed Deputy Moore's cruiser. She testified that she noticed the driver, later identified as the appellant, sat up "real fast, up against the steering wheel" and then hit the white fog line after passing Deputy Moore's cruiser. Deputy Moore explained that appellant traveled from the fast lane to the slow lane and crossed over the fog line "so much so that she hit the rumble strips and then came back into her lane of travel." Appellant then crossed back into the fast lane.

{¶8} Deputy Moore testified that the marked violation occurred after appellant passed the parked cruiser, and that she observed the violation through her driver's side window. Upon seeing the violation, Deputy Moore manually turned on the dash cam of the cruiser and pulled out behind the vehicle. The violation itself is not captured on the dash cam.

{¶9} Deputy Moore travelled behind the vehicle and continued to watch appellant's driving behaviors for approximately three miles before activating her overhead lights and sirens. During this time, appellant reduced her speed at one point to 62 miles per hour (mph) when the posted speed limit was 70 mph.

3

{¶10} After initiating the traffic stop, Deputy Moore made contact with appellant. Deputy Moore testified that appellant appeared disheveled, was breathing heavily, and digging through her stuff. Deputy Moore advised appellant that she was pulled over for a marked lanes violation. Appellant responded that she had thought she was stopped for speeding. After advising appellant that she was travelling under the posted speed limit, Deputy Moore testified she had expected appellant's nervousness to dissipate but it did not. Appellant continued to dig through her bag, breathe heavily, speak rapidly, touch her hair, and adjust her shirt. Deputy Moore explained that appellant had crossed over the fog line and inquired if appellant heard her tires hit the rumble strips. Appellant stated that she did. Appellant also advised that the vehicle did not belong to her but to another individual.

{¶11} Deputy Moore then asked appellant to exit the vehicle to get additional information regarding vehicle registration, insurance, address, and to conduct a LEADS inquiry. After relaying the driver's license information to dispatch and while awaiting a response, Deputy Moore walked K-9 Cavo around the vehicle to conduct an open-air exterior sniff. K-9 Cavo positively alerted the driver's side of the vehicle prior to Deputy Moore receiving the LEADS report from dispatch.

{¶12} The trial court orally overruled the motion to suppress at the conclusion of the hearing. The trial court observed that "[j]ust because that particular violation is not caught on camera, doesn't mean it didn't occur." The trial court also concluded that "the Deputy did observe the marked-lane violation."

{¶13} This was reiterated in the February 3, 2023 written entry, wherein the court concluded that "Deputy Moore had probable cause to stop the vehicle based upon the

4

commission of a traffic offense. She conducted the K-9 search within 7 minutes of the stop, which is reasonable and occurred prior to her receipt of the requested driver information from LEADS."

{¶14} On March 8, 2023, appellant pled no contest to all charges as contained in the indictment. Bond was continued and a presentence investigation ("PSI") was ordered.

{¶15} On May 5, 2023, the trial court sentenced appellant to an intensive supervision program for six months with an additional 18 months of general supervision.[2] The trial court also required appellant to undergo substance abuse and mental health evaluations and follow any recommendations as a result of those evaluations, attend two sober support meetings per week, and to seek and maintain employment. The trial imposed a $400 fine plus costs.

{¶16} Appellant now appeals. After filing her notice of appeal and the filing of the record, appellant subsequently sought a limited remand to supplement the record with a video recording admitted as Exhibit 1 at the suppression hearing. This motion was granted on November 7, 2023.

{¶17} Appellant raises the following assignment of error for review: "The trial court committed reversible error when it overruled the Motion to Suppress against the manifest weight of the evidence."

{¶18} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to

_____

2. The trial court initially imposed a 12-month prison term on Count One and a 90-day jail sentence on Count Two. Those sentences were suspended in favor of the community control sanctions and probation. This is procedurally incorrect. *State v. Stokel*, 11th Dist. Portage No. 2023-P-0065, 2024-Ohio-893, ¶ 15.

5

Case No. 2023-P-0041

resolve factual questions and evaluate the credibility of witnesses." *Id.* We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.*

{¶19} While appellant presented several issues in her initial and amended motions to suppress, appellant solely argues that Deputy Moore lacked the requisite probable cause to conduct the traffic stop in her first assignment of error. Our review is limited to the assignments of error presented in appellant's brief, the record on appeal, and the oral argument. App.R. 12(A)(1)(b).

{¶20} Specifically, appellant asserts that Deputy Moore's testimony "is factually impossible" and is contrary to the video evidence which proves Deputy Moore lacked probable cause to initiate a traffic stop. We disagree.

{¶21} "It is well established that '[a]n officer's observation of a traffic violation provides probable cause to stop a vehicle.'" *State v. Brown*, 11th Dist. Lake No. 2021-L-017, 2021-Ohio-3078, ¶ 9, quoting *State v. Freshwater*, 11th Dist. Lake No. 2018-L-117, 2019-Ohio-2968, at ¶ 7.

{¶22} Crossing over marked lanes is a citable traffic violation under R.C. 4511.33. "Violations of traffic laws not only give rise to a reasonable suspicion that a crime is or about to occur, but can form probable cause for a traffic stop. 'A traffic stop is reasonable when an officer possesses probable cause to believe an individual committed a traffic violation.'" *State v. Armington*, 2019-Ohio-1713, 136 N.E.3d 6, (11th Dist.), ¶ 35 quoting *State v. Davis*, 11th Dist. Portage No. 2005-P-0077, 2006-Ohio-3424, ¶ 23, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

6

Case No. 2023-P-0041

{¶23} The trial court believed Deputy Moore observed a marked lanes violation and the trial court is in the best position to evaluate her credibility. Upon review of the record, we conclude the trial court's decision is supported by competent, credible evidence.

{¶24} Deputy Moore testified that she observed appellant's vehicle cross over the fog lines and onto the rumble strips prompting her to conduct a traffic stop. This violation was not captured on the dash cam. The dash cam was manually initiated after observing the traffic violation from Deputy Moore's stationary cruiser which was parked perpendicular to Interstate 76 in Rootstown Township, Portage County, Ohio. The trial court, which is in the best position to judge the credibility of the witnesses, found Deputy Moore to be credible. Moreover, on the video, Deputy Moore approaches the vehicle appellant is driving and informs her of a marked lanes violation. Deputy Moore asks appellant "did you hear the rumble strips at all?" Appellant responds, "yeah."

{¶25} "Once an appellate court determines whether the trial court's factual findings are supported by the record, the court must then engage in a de novo review of the trial court's application of the law to those facts. *State v. Eggleston*, 2015-Ohio-958, 29 N.E.3d 23, ¶ 18 (11th Dist.).

{¶26} Consistent with well-established precedent, the marked lanes violation provided Deputy Moore with probable cause to stop the vehicle operated by appellant. *Brown*, 2021-Ohio-3078 at ¶ 9. Because this is the only issue raised by appellant in her briefing, we conclude that the trial court correctly applied the law to the facts. As such, appellant's sole assignment of error is without merit.

7

{¶27} For the reasons set forth above, the judgment of the Portage County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2023-P-0041