[Cite as *State v. Smith*, 2024-Ohio-3066.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-G-0001** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JOHN W. SMITH, JR., | |
| Defendant-Appellant. | Trial Court No. 2022 C 000202 |

**O P I N I O N**

Decided: August 12, 2024
Judgment: Affirmed

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Jerri Mitchell*, P.O. Box 1126, Fairport Harbor, OH 44077 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}　Defendant-appellant, John W. Smith, Jr. ("appellant"), appeals from his convictions for Possession of a Fentanyl-Related Compound, Possession of Heroin, Aggravated Possession of Drugs, and Possessing Criminal Tools from the Geauga County Court of Common Pleas.　For the following reasons, we affirm.

{¶2}　On August 29, 2022, the Geauga County Grand Jury returned a seven-count indictment charging appellant with Trafficking in a Fentanyl-Related Compound, a first-degree felony, in violation of R.C. 2925.03(A)(2)(C)(9)(f) with a forfeiture specification in accordance with R.C. 2941.1417(A) ("Count 1"); Possession of a Fentanyl-Related

Compound, a first-degree felony, in violation of R.C. 2925.11(A)(C)(11)(b) ("Count 2"); Trafficking in Heroin, a second-degree felony, in violation of R.C. 2925.03(A)(2)(C)(6)(e) ("Count 3"); Possession of Heroin, a second-degree felony, in violation of R.C. 2925.03(A)(C)(6)(d) ("Count 4"); Aggravated Trafficking in Drugs, a fourth-degree felony, in violation of R.C. 2923.03(A)(2)(C)(1)(a) ("Count 5"); Aggravated Possession of Drugs, a fifth-degree felony, in violation of R.C. 2925.11(A)(C)(1)(a) ("Count 6"); and, Possessing Criminal Tools, a fifth-degree felony, in violation of R.C. 2923.24(A) ("Count 7").[1]

{¶3}    Appellant pleaded not guilty at arraignment on February 17, 2023, and bond was set at $75,000 cash or surety subject to pretrial release conditions. Appellant requested a modification to bond on April 10, 2023, and such request was denied.

{¶4}    On May 22, 2023, appellant filed a motion to suppress evidence "on the grounds that said evidence is the fruit of an unconstitutional search and seizure in violation of the rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14, of the Ohio Constitution." Specifically, appellant alleged that he was unlawfully detained beyond the length of time reasonably necessary to issue a traffic citation. A suppression hearing was held on July 7, 2023. The State presented a single witness, Sergeant Jon Bilicic of the Geauga County Sheriff's Office ("Sgt. Bilicic"), and a single exhibit, the recording from the dash cam in Sgt. Bilicic's cruiser. The following facts were presented during the hearing:

---

1. The State informed the trial court and appellant at arraignment that the Revised Code section cited in Count 2 of the indictment was incorrect and indicated that the State would be seeking to amend that Count. Count 2 was later amended from a violation of R.C. 2925.11(A)(C)(11)(b) to R.C. 2925.11(A)(C)(11)(e) on March 31, 2023.

2

{¶5}    On May 11, 2022, Sgt. Bilicic was working the 5 a.m. to 5 p.m. shift. Sgt. Bilicic was working closely with the narcotics division and was parked in his patrol car on OH-528 between Nauvoo Road and OH-87 in Middlefield Township, Geauga County, Ohio. Sgt. Bilicic was informed by a detective that appellant was travelling northbound on OH-528 in a Ford Mustang. The appellant's vehicle went left of center, was travelling "really close" behind another vehicle, and then slowed down below the speed limit as he passed Sgt. Bilicic's parked cruiser.  Sgt. Bilicic initiated a traffic stop.

{¶6}    Sgt. Bilicic approached appellant's stopped vehicle, and advised appellant of the reason for the stop. Sgt. Bilicic testified that appellant was nervous, visibly shaking and sweating. Sgt. Bilicic asked for appellant's driver's license and information. Appellant informed him that he did not have his driver's license on him, and he provided his social security number to Sgt. Bilicic instead. Sgt. Bilicic testified that it takes longer to get the necessary information during a traffic stop when a driver provides alternative identification information instead of a driver's license.

{¶7}    Sgt. Bilicic returned to his cruiser to begin running the appellant's information and requested that a K-9 unit respond. While running the information through his computer, Sgt. Bilicic observed appellant moving around the vehicle, reaching into the back seat, and appeared to grab a bag from the back seat of the vehicle. Based on these observations, Sgt. Bilicic reapproached appellant and asked him to step out of the vehicle due to officer safety concerns. Sgt. Bilicic patted appellant down for weapons and had him stand in front of the cruiser. Sgt. Bilicic then returned to processing the traffic stop citation.

3

{¶8} As Sgt. Bilicic began to explain the traffic citation to appellant, Deputy Greg Borden and his K-9 approached the vehicle. Upon seeing Deputy Borden arrive, the Defendant said "Oh, shit." The K-9 then alerted to the driver's side door.

{¶9} Based on the positive alert from the K-9, appellant was placed in the back of Sgt. Bilicic's cruiser and appellant's vehicle was searched. Fentanyl, heroin, and methamphetamine were ultimately recovered from the vehicle.

{¶10} The trial court denied the motion to suppress on August 2, 2023.

{¶11} On September 27, 2023, appellant appeared with counsel and entered a plea of no contest to the indictment. The State agreed that Counts 1 and 2, Counts 3 and 4, and Counts 5 and 6 merged for purposes of sentencing and elected to proceed on Counts 2, 4, and 6 and the remaining count, Count 7. The State offered the following factual basis at the hearing:

> Had this proceeded to trial, the State would have proved beyond a reasonable doubt that on May 11th, 2022, the Defendant did possess and did ship, transport or prepare for distribution the following drugs and the following amounts, a total of 30.9 grams of Fentanyl, a total of 12.55 grams of Heroin, and a total of 2.86 grams of Methamphetamine.
>
> Additionally, the State would have proved beyond a reasonable doubt that the Defendant would have $3,044.00 subject to forfeiture.
>
> And the State would have also proved beyond a reasonable doubt that the Defendant had in his control an instrument or article with purpose to use it criminally, and that the circumstances indicated that the device or article would have been used in the commission of a felony.

{¶12} The trial court accepted appellant's plea, found him guilty, and ordered a pre-sentence investigation ("PSI"). Bond was also revoked.

4

Case No. 2024-G-0001

{¶13} A sentencing hearing was held on November 15, 2023. The trial court sentenced appellant to a minimum term of 10 years and up to 15 years on Count 2; seven years on Count 4; 11 months on Count 6; and eight months on Count 7. The sentences were ordered to be served concurrently to one another. The trial court further ordered $3,440 to be forfeited to the State of Ohio.

{¶14} Appellant filed a motion for leave to file a notice of appeal on January 2, 2024, which was granted. Appellant now raises two assignments of error for review.

> [1.] "Defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution and Article I Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel."
>
> [2.] "The trial court committed prejudicial error in denying defendant-appellant's motion to suppress by finding that the facts do not support a conclusion that the defendant appellant's Fourth Amendment rights were violated."

{¶15} In his first assignment of error, appellant argues that counsel was ineffective for failing to challenge the officer's probable cause for the stop during the motion to suppress. Appellant also asserts within his second assignment of error, that his counsel was further ineffective for failing to raise the qualifications, training, and proficiency of the dog during the suppression hearing.

{¶16} "The plea of no contest is not an admission of defendant's guilt but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Crim.R. 11(B)(2).

{¶17} "This court repeatedly held that '[a] plea of guilty or no contest waives any prejudice a defendant suffers arising out of his counsel's alleged ineffective assistance,

5

except with respect to a claim that the particular failure alleged impaired the defendant's knowing and intelligent waiver of his right to a trial.'" (Citations omitted). *State v. Armstrong*, 2017-Ohio-625, ¶ 14 (11th Dist.) quoting *State v. Bregitzer*, 2012-Ohio-5586, ¶ 17 (11th Dist). Therefore, a no contest or guilty plea precludes claims of ineffective assistance regarding suppression issues because an offender is unable to demonstrate the prejudice necessary to support such a claim. *Id.* at ¶ 15.

> [T]he failure to suppress evidence has no prejudicial impact upon a conviction based on a guilty plea "because the conviction does not result from the unsuppressed evidence, but from the defendant's admission, by his plea, of the facts alleged in the [indictment]. Thus, a failure to suppress evidence resulting from a deficiency in trial counsel's legal representation will not satisfy the prejudice prong of * * * S*trickland v. Washington*, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]." See S*tate v. Fitzgerald*, 2nd Dist. Greene No. 2001-CA-124, 2002-Ohio-3914, ¶ 44. This court followed the Second District's holding in *Fitzgerald* in *State v. Bregitzer*, 11th Dist. Portage No. 2012-P-0033, 2012-Ohio-5586, ¶ 17.

*Id.* at ¶ 15, quoting *State v. Strong*,2013-Ohio-5189, ¶ 31 (11th Dist.).

{¶18} In *Armstrong*, the defendant alleged that while his counsel challenged the traffic stop, counsel failed to argue his continued detention following the stop. Here, appellant's counsel raised appellant's continued detention, but did not challenge the traffic stop or challenge the training or proficiency of the dog. The result is the same. Appellant's no contest plea waived any prejudice resulting from his counsel's alleged ineffective assistance of counsel except with respect to a claim that the alleged failure impaired his knowing an intelligent waiver of his right to trial.

{¶19} Because appellant makes no argument regarding the knowing, intelligent, or voluntary nature of his plea, his first assignment of error is without merit.

6

Case No. 2024-G-0001

{¶20} In his second assignment of error, appellant argues that the trial court erred in denying his motion to suppress.

{¶21} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* citing *State v. Mills,* 62 Ohio St. 3d 357*.* We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.* "Once an appellate court determines whether the trial court's factual findings are supported by the record, the court must then engage in a de novo review of the trial court's application of the law to those facts. *State v. Eggleston*, 2015-Ohio-958, ¶ 18 (11th Dist.) citing *State v. Lett*, 2009-Ohio-2796, ¶ 13 (11th Dist.).

{¶22} Appellant asserts in his brief that there was "no reason to effectuate a stop on [appellant's] vehicle and to prolong the stop." "It is well established that '[a]n officer's observation of a traffic violation provides probable cause to stop a vehicle.'" *State v. Brown*, 2021-Ohio-3078, ¶ 9 (11th Dist.), quoting *State v. Freshwater*, 2019-Ohio-2968, ¶ 7 (11th Dist.). Crossing over marked lanes is a citable traffic violation under R.C. 4511.33. "Violations of traffic laws not only give rise to a reasonable suspicion that a crime is or about to occur, but can form probable cause for a traffic stop. 'A traffic stop is reasonable when an officer possesses probable cause to believe an individual committed a traffic violation.'" *State v. Armington*, 2019-Ohio-1713, (11th Dist.), ¶ 35 quoting *State*

7

*v. Davis*, 2006-Ohio-3424, ¶ 23 (11th Dist.), citing *Whren v. United States*, 517 U.S. 806, 809, (1996). See also, *State v. Millard*, 2024-Ohio-1342, ¶ 22 (11th Dist.).

{¶23} The trial court did not permit appellant to argue the probable cause of the stop, as such argument was not raised in the motion prior to the hearing. Indeed, appellant's motion indicated that he did not contest the validity of the initial stop. However, the trial court concluded that "the traffic stop was valid."

{¶24} While the traffic violation was not captured on Sgt. Bilicic's dash cam, Sgt. Bilicic testified that the vehicle went left of center and was following another vehicle very closely. He initiated a traffic stop and, upon approach, informed appellant for the basis of the stop, travelling left of center. Sgt. Bilicic also observed that appellant was not wearing a seat belt and appeared nervous. Appellant was shaking and was sweating. The zipper of appellant's pants was down. The traffic violation was probable cause for the stop.

{¶25} Appellant next argues that the trial court erred in determining that the stop was unlawfully delayed. Thus, our inquiry turns to whether appellant was delayed " 'for a time period sufficient to issue a ticket or a warning.' " *State v. Heath*, 2023-Ohio-2647, ¶ 24 (11th Dist.) quoting *State v. Batchili*, 2007-Ohio-2204 ¶ 12, *State v. Howard*, 2006 Ohio-5656, ¶ 15 (12th Dist.). "In *Batchili*, the Supreme Court of Ohio explained this " 'includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates.' " *Id.*, quoting *Howard* at ¶ 15. The court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation in order to determine if an officer completed these tasks within a reasonable time. *Id.*" *Heath* at ¶ 24.

Case No. 2024-G-0001

{¶26} The timing of the traffic stop was not unreasonable. Sgt. Bilicic testified that an average traffic stop takes 15 to 20 minutes to complete. The length of the instant traffic stop, from the time the stop was initiated to the positive alert by the K-9 unit was approximately 12 minutes and 5 seconds.

{¶27} According to State's Exhibit 1, the traffic stop is initiated and Sgt. Bilicic approaches appellant's vehicle at approximately 2 minutes and 30 seconds. Sgt. Bilicic advises appellant of the nature of the stop and asks about appellant's lack of seat belt. Appellant does not have his driver's license and instead provides a social security number for identification. Sgt. Bilicic returns to his vehicle at approximately 4 minutes into the video, less than two minutes after the stop was initiated. Sgt. Bilicic immediately requests back up from the K-9 unit.

{¶28} Sgt. Bilicic testified that there are additional steps he must do when using a social security number or alternative identification instead of a driver's license. While Sgt. Bilicic is beginning to run appellant's information and process the ticket, appellant can be seen rummaging around and moving inside of the vehicle. Sgt. Bilicic returns to appellant's vehicle at approximately 6 minutes into the video, less than four minutes after the stop has been initiated. Sgt. Bilicic has appellant step out of his vehicle for officer safety. Sgt. Bilicic again comments on appellant's sweating and asks if he has any medical conditions. At approximately 7 minutes and 20 seconds into the video, Sgt. Bilicic has appellant stand at his front bumper so that he can return to writing the citation.

{¶29} Approximately eight minutes into the video, Sgt. Bilicic asked if appellant owned the vehicle. Beeps and other noises can be heard on the video during this time. Sgt. Bilicic testified that the noises indicate when certain information is coming through

9

his computer. Sgt. Bilicic testified that the Law Enforcement Automated Data System ("LEADS") returned at approximately 12 minutes on the video, or less than ten minutes from the time of the stop.

{¶30} At approximately 12 minutes 25 seconds, Sgt. Bilicic asks if appellant had proof of insurance. Appellant did not. Shortly thereafter, at approximately 13 minutes and 40 seconds into the video, Sgt. Bilicic is reviewing the ticket and talking to appellant. Sgt. Bilicic can be seen writing information on the citation form when the canine officer walks by them with his dog. At approximately 14 minutes and 40 seconds, the dog positively alerted to the driver's side door while Sgt. Bilicic is reviewing the ticket information with appellant. Less than twelve and a half minutes elapsed from the time appellant's vehicle was stopped to the time the dog positively alerted to the vehicle. Sgt. Bilicic had not yet completed processing the ticket at the time the dog alerted.

{¶31} As previously recognized by this court in *State v. Heath,* 2023-Ohio-2647, ¶ 26 (11th Dist.):

> Cases involving searches after a traffic stop are heavily fact-dependent, and we recognize the pretextual undertones this case presents. We are bound, however, by the precedent of this court that "an exterior sniff by a trained narcotics dog to detect the presence of contraband does not constitute a search under circumstances in which a vehicle has been lawfully detained." *State v. Melone*, 11th Dist. Lake 2009-L-047, 2009-Ohio-6710, ¶ 58. Where an inspection by law enforcement does not intrude on a legitimate expectation of privacy, there is no search subject to the Warrant Clause of the Fourth Amendment. *Id.,* citing *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). It follows, therefore, that any interest in possessing contraband cannot be characterized as "legitimate," and an exterior dog sweep, which only reveals the possession of contraband, does not compromise a legitimate privacy interest. *Id.*, citing *Illinois v. Caballes*, 543 U.S. 405, 408-409, 125 S.Ct. 834, 160 L.E.2d 842 (2005). See also *Henry* [2007-Ohio-6732] at ¶ 26 [(11th

10

Dist.)] (Police need not have a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff).

{¶32} After a detailed review of Sgt. Bilicic's testimony and the dash cam video, we agree with the trial court that the stop was neither delayed nor unreasonable. The exterior dog sniff occurred before the traffic stop was completed and before a citation issued.

{¶33} The trial court's factual findings are supported by the record, the trial court appropriately applied the law to the facts. See, *State v. Eggleston*, 2015-Ohio-958, ¶ 18 (11th Dist.). Therefore, appellant's second assignment of error is without merit.

{¶34} For the reasons set forth above, the judgment of the Geauga County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-G-0001