[Cite as *State v. Parker*, 2018-Ohio-3239.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-T-0097** |
| NAKYIA DELSHAWN PARKER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2013 CR 00921.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Nakyia D. Parker, appeals his convictions for heroin possession and having weapons while under a disability. He challenges the denial of his motion to suppress, the propriety of the trial court's "constructive possession" jury instruction, the manifest weight of the evidence, and the imposition of consecutive prison terms. We affirm.

**{¶2}** On October 12, 2013, at approximately 9:00 p.m., the Warren City Police Department received a call concerning multiple gunshots in the vicinity of Southern Boulevard on the city's northwest side. Multiple police officers were dispatched, including Sergeant Greg Coleman of the Emergency Services Division and Patrolman Trevor Sumption.

**{¶3}** As the officers arrived at a Southern Boulevard address, the department received another call regarding gunshots near 3126 Starlite Avenue, just around the corner from their Southern Boulevard location. The officers went to the Starlite residence, and as part of their initial investigation spoke with witnesses who said they were nearby when the gunshots rang out. One witness told Sergeant Coleman that the gunshots came from 3126 Starlite and were directed at his son, who immediately left the scene. The other witness told Patrolman Sumption that there was an exchange of gunfire from the homes at 3126 Starlite and 1341 Starlite, located cattycorner to each other.

**{¶4}** The officers found bullet casings in the street directly in front of 3126 Starlite. They also saw bullet holes in the exterior of the home and a vehicle in the driveway with its windows shot out.

**{¶5}** In combing the surrounding area, Patrolman Sumption found a key fob with an attached set of keys. The officer immediately pressed the panic button on the fob. Within moments, the officers received notice from dispatch that a panic alarm was sounding at 3126 Starlite.

**{¶6}** Multiple later arriving officers approached the residence and knocked on the two main doors. There was no response. Initially, they did not see anyone through

the windows, but saw items on a kitchen table appearing to be illegal drugs. The officers also contacted a number of local hospitals to determine if anyone had recently sought treatment for gunshots.

{¶7} Unable to determine whether there was someone inside 3126 Starlite who might be injured, the officers sought and obtained the blessing of the city prosecutor to enter for the limited purpose of checking for injured. Officer Sumption used one of the found keys to open the back door. Moments before Officer Sumption entered the residence, another officer accompanying him saw a hand move one of the blinds in a corner window on the main floor, which turned out to be a child's bedroom.

{¶8} Once inside, the officers immediately announced who they were and demanded that anyone inside reveal themselves. Three men came up from the basement. After the men were taken outside, the officers called out again. This time, appellant appeared from the front of the home. He was immediately handcuffed and placed into a police cruiser.

{¶9} After appellant was in custody, the officers conducted a cursory search of the entire house for injured people. No others were found. However, the officers saw incriminating items in plain view, including, two firearms on a sofa in the living room, marijuana and heroin on the kitchen counter and table, a significant amount of cash in an open dresser drawer in one of the bedrooms, and a large television in the master bedroom with a surveillance system displaying the approach to both main doors.

{¶10} The prosecutor, thereafter, obtained a search warrant for 3126 Starlite. In executing the warrant, the officers found three firearms, one of which was in a closet in a child's bedroom at the left-back corner of the house where the officer saw a hand

3

move the blind. The officers also found a large brick of heroin in the kitchen freezer and more than $43,000 in cash.

{¶11} Appellant was indicted on one count of having weapons while under a disability and one count of possession of heroin, with a forfeiture specification for the cash.

{¶12} Appellant moved to suppress all evidence obtained from the residence. Appellant primarily argued the officers lacked grounds to conduct the initial warrantless search for injured people. The state first maintained that appellant lacked standing to challenge the search due to lack of a reasonable expectation of privacy since he did not own the home or live there. The state, however, altered its posture upon learning that the officers found appellant's wallet in the master bedroom, along with his ID, and a "Direct TV" bill addressed to him at 3126 Starlite. Accordingly, a supplemental hearing was held. As part of its ensuing judgment overruling the motion to suppress, the trial court concluded that appellant had standing to contest the search because he had been staying at the home. Nevertheless, the court found the initial search valid under the "emergency aid" exception to the warrant requirement.

{¶13} A four-day jury trial was held. In addition to presenting the testimony of the four police officers involved in the searches, the state introduced tapes of telephone calls appellant made from the county jail immediately following his arrest. During the calls, he said that the officers used his key to enter the home and took all his money. Appellant also inquired about whether the officers found the drugs in the freezer, and refers to one of the found guns. Appellant did not present any evidence. The jury found him guilty on both charges and the forfeiture specification.

4

{¶14} At the sentencing hearing, the trial court made express findings under R.C. 2929.14(C)(4) warranting consecutive prison terms. The court found consecutive sentences necessary to adequately punish appellant and not disproportionate to both the seriousness of his conduct and the danger he poses to society. The court also found consecutive sentences necessary to adequately protect the public due to appellant's past criminal history. Accordingly, the trial court imposed consecutive terms of eight years for possession and two years for having weapons under disability.

{¶15} Appellant asserts four assignments of error on appeal:

{¶16} "[1.] The trial court erred in denying appellant's motion to suppress all evidence against him, in violation of his rights pursuant to the Fourth Amendment to the United States Constitution.

{¶17} "[2.] The trial court erred, as a matter of law, by giving an incomplete and otherwise defective instruction to the jury on 'Constructive Possession.'

{¶18} "[3.] Appellant's convictions are against the manifest weight of the evidence.

{¶19} "[4.] The trial court erred by imposing consecutive sentences upon appellant."

{¶20} Under his first assignment, appellant challenges the trial court's decision that the initial search of the residence was warranted under the emergency aid exception to the search warrant requirement. He contends that the officers' conduct belies their stated purpose for the first search because it was not conducted until they had already been on the scene for over an hour; they did not call medical squads to the scene; and the police dogs had already arrived.

5

**{¶21}** "A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few well-delineated exceptions. *Katz v. United States* (1987), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d.576. The doctrine of exigency is an exception to the general, constitutional prohibition against warrantless searches. 'Exigency' denotes the existence of 'real immediate and serious consequences' that would certainly occur were a police officer to postpone action to get a warrant. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 751, 104 S.Ct. 2091, 80 L.Ed.2d 732. As such, a court will not 'excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.' *McDonald v. United States* (1948), 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153.

**{¶22}** "The United States Supreme Court has held that the doctrine of exigency applies in two separate sets of circumstances: first, police may commence a warrantless search and seizure to avoid 'the imminent destruction of vital evidence.' *Wong Sun v. United States* (1963), 371 U.S. 471, 483, 83 S.Ct. 407, 9 L.Ed.2d 441. Second, a warrant is unnecessary where the police are faced with a 'need to protect or preserve life or avoid serious injury.' *Mincey v. Arizona* (1978), 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290." *State v. Stanberry*, 11th Dist. Lake No. 2002-L-028, 2003-Ohio-5700, ¶14-15.

**{¶23}** "'Thus, the emergency aid exception allows officers to enter a dwelling without a warrant and without probable cause when they reasonably believe, based on specific and articulable facts, that [someone] is in need of immediate aid.' *State v. Gooden*, 9th Dist. No. 23764, 2008-Ohio-178, ¶6. The case must be viewed through

6

the eyes of a reasonable and prudent police officer acting in response to an emergency situation. *Id.* citing 2 *LaFave, Search & Seizure*, [Section] 6.6(a), p. 698. 'The officer must be able to point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant intrusion into protected areas.' *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904 ¶17 (9th Dist.). 'Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception.' *Michigan v. Fisher*, 558 U.S. 45, 49, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009)." *State v. Stanley*, 7th Dist Mahoning No. 13 MA 159, 2014-Ohio-5636, ¶7.

{¶24} In challenging the trial court's emergency aid analysis, appellant argues the officer's subjective intent is relevant. However, this argument has been rejected.

{¶25} "[I]t is well settled that as long as the circumstance justify the officers' actions, their subjective intent is irrelevant. In *Brigham City, Utah v. Stuart* (2006), 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650, the United States Supreme Court stated:

{¶26} "'[L]aw enforcement officers may enter a home without a warrant *to render emergency assistance to an injured occupant* or to protect an occupant from imminent injury.'

{¶27} "'* * *

{¶28} "'An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." * * * The officer's subjective motivation is irrelevant. * * * It therefore does not matter * * * whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence.'

7

(Emphasis added.)  *Id.* at 403-405, 126 S.Ct. 1943, 164 L.Ed.2d 650."  *State v. Minear*, 191 Ohio App.3d 774, 2010-Ohio-6577, 947 N.E.2d 751, ¶35-38 (11th Dist.).

{¶29}  At the time of the initial search, the officers had a reasonable belief based on specific and articulable facts to search for injured people.  The officers found multiple bullet casings in the street in front of the home; there were multiple bullet holes in the exterior of the home; the windows of a parked car in the driveway were shot out; and when they knocked on the doors, no one answered.

{¶30}  Appellant further argues the lack of urgency because the officers had not called any emergency squads to the scene prior to the search.  However, the emergency aid exception does not require knowledge of actual injury, only articulable facts warranting a reasonable belief that someone could be injured and in need.  To this extent, there is no requirement to call for medical aid pre-search.  Moreover, the presence of the police dogs for later investigation, and a one hour delay do not render their initial entry unlawful.

{¶31}  Appellant's first assignment is without merit.

{¶32}  Under his second assignment, appellant contends that the trial court erred in instructing the jury on constructive possession.  First, he contends the instruction was flawed because it did not state that mere proximity to an item is insufficient to prove constructive possession.  Second, he maintains the instruction was not warranted because the state failed to present evidence that appellant was aware of the heroin or that he could exercise control over it.

{¶33}  "'Possession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through

8

ownership or occupation of the premises upon which the thing or substance is found.' R.C. 2925.01(K). Possession of [any item] may be actual or constructive, and constructive possession may be established 'entirely by circumstantial evidence.' *State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶28; *State v. Swain*, 6th Dist. Erie Nos. E-11-087, E-11-088, 2013-Ohio-5900, ¶40-41.

{¶34} "'Constructive possession exists when an individual is able to exercise dominion or control over an item, even if the individual does not have the item within his immediate physical possession.' *State v. Kingland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶13. 'However, the mere fact that (drugs are) located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was *conscious* of the presence of the object. Without this element one could be found to be in illegal possession of (drugs) surreptitiously placed in or upon his property by another.' (Emphasis added.) (Citations omitted.) *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1992)." *State v. Hudson*, 11th Dist. Trumbull No. 2014-T-0097, 2017-Ohio-615, ¶45-46.

{¶35} As part of the jury instructions in this case, the trial court stated definitions for various legal terms. In regard to the term "possession," the trial court first quoted the basic statutory definition for that term, as set forth in R.C. 2925.01(K). As noted above, that definition provides that "possession" cannot be inferred solely from "mere access" to an item; i.e., a person must have control over the item for it to be in his possession. After stating the statutory definition, the trial court told the jury that "possession" may be actual or constructive. The court then defined "constructive possession" as occurring when a person "is able to exercise control" over an item.

9

{¶36} Given the order in which the trial court gave the definitions for the terms "possession" and "constructive possession," the jury was clearly informed that, regardless of whether the state was trying to prove "actual" possession or "constructive" possession, mere access to a thing or substance is not sufficient to establish either type of possession. Although the trial court did not use the phrase "mere proximity" in the instruction, the use of the phrase "mere access," as stated in the statutory definition of R.C. 2925.01(K), is sufficient to provide a proper statement of the controlling law. Thus, when read in context, the court's "constructive possession" instruction is valid.

{¶37} In regard to the separate issue of whether the constructive possession instruction is justified by the evidence, as the officers were about to enter the residence to look for injured persons, an officer saw a hand by a blind covering a window in the corner bedroom on the main floor. After the house was cleared, it was discovered that appellant was in that room and one of the three found firearms was in a closet in that room.

{¶38} As part of the taped telephone conversations played for the jury, appellant expressly asked whether the police found the drugs in the freezer, and also made reference to one of the firearms in the home. Accordingly, the state presented some evidence establishing that even though the firearms and drugs were not on appellant's person when he was taken into custody, he was fully aware of their presence and had access to them justifying the constructive possession instruction.

{¶39} Appellant's second assignment is without merit.

{¶40} Under his next assignment, appellant asserts that his convictions are against the manifest weight of the evidence. He submits that he should not have been

10

convicted of either offense when there was no evidence that he resided at 3126 Starlite Avenue.

{¶41} "A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 387 (1997). The court determines whether, in resolving conflicts in the evidence and deciding witness credibility, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* Witness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the jury. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. *Thompkins*, *supra*, at 390, 678 N.E.2d 541." *State v. Irby*, 11th Dist. Trumbull No. 2015-T-0018, 2015-Ohio-5467, ¶45.

{¶42} There is no dispute that appellant did not own the residence in question. Nevertheless, there was evidence from which the jury could find that appellant was living there. First his wallet and ID were found in the master bedroom. Second, the officers found a "Direct TV" bill in one of the bedrooms addressed to him at that address. Third, appellant made statements during the taped telephone conversations establishing that he was well aware of at least one gun, heroin, cash, and other incriminating things as already discussed. Moreover, neither conviction turns on

11

whether he lived there. His knowledge and presence along with the other discussed facts support the convictions.

{¶43} Therefore, the jury did not lose its way in finding him guilty of the charged offenses.

{¶44} As a separate argument under this assignment, appellant asserts that the state committed multiple mistakes in investigating the case and providing discovery. For example, he notes that the police officers did not attempt to obtain fingerprints from the three weapons. However, appellant fails to explain how this or any other perceived shortcomings renders the convictions against the manifest weight. His third assignment of error also lacks merit.

{¶45} Under his final assignment, appellant challenges the factual findings supporting imposition of consecutive sentences. He maintains that the court's ruling is based in part upon an unsupported finding that he was involved in the exchange of gunshots, a crime for which he was not charged, for which there was no evidence, and that the jury did not consider.

{¶46} Appellate review of a felony sentence is governed by R.C. 2953.08(G)(2):

{¶47} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶48} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court

may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶49}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶50}** "(b) That the sentence is otherwise contrary to law."

**{¶51}** The imposition of consecutive prison terms for multiple felony offenses is governed by R.C. 2929.14(C)(4), one of the five statutory provisions referenced in R.C. 2953.08(G)(2)(a). As a result, the imposition of consecutive terms will be affirmed on appeal unless this court clearly and convincingly finds that the record fails to support the trial court's findings under R.C. 2929.14(C)(4).

**{¶52}** "It is important to note 'that the clear and convincing standard used by R.C. 2953.08 (G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings.' [*State v.*] *Venes*, 2013-Ohio-1891, 992 N.E.2d 453, at ¶21. 'In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.' *Id.*" *State v. Rodeffer*, 2nd Dist. Montgomery Nos. 25574, 25575, and 25576, 2013-Ohio-5759, ¶31.

**{¶53}** Pursuant to R.C. 2929.14(C)(4), a trial court "may" sentence the offender to consecutive prison terms if it finds: (1) such terms are "necessary to protect the public from future crimes or to punish the offender"; (2) such terms "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the

public"; and (3) one of three enumerated alternatives exist.  In our case, the trial court found two alternatives present:

{¶54} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶55} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶56} Regarding the three R.C. 2929.14(C)(4) requirements, appellant makes the general assertion that the trial court's findings are not supported by the evidence.  However, he does not present specific argument concerning any of the three requirements.  Instead, he argues that the trial court predicates its decision to impose consecutive sentences for unrelated reasons.  At sentencing the trial court said:

{¶57} "I will say, you know, that when you look at the totality of this case, looking back into your background, discharging of a firearm into a habitation, but for the grace of God, nobody died in that situation or else we wouldn't be here today.  The other thing that I think about with respect to all these weapon charges is in our case here, there was gun play all over the street there.  There were shots fired into the house where children live in the house that you were in.  Shots fired into a car there that you were in.  And I will tell you this.  Based on the facts and the background, shots weren't fired in that house because you were a good citizen.  There were other reasons for it.  There's

14

gun play all over the city. People are frightened. They are fleeing the city and moving to other places because of people like you."

{¶58} The trial court, however, did not, as appellant contends, punish him for a crime that he did not commit by recounting the undisputed gunfire precipitating police response. The trial court never concluded that appellant fired any shots, and there is no question that the risk of gunfire increases with drug activity, a relevant sentencing consideration.

{¶59} Alternatively, while a trial court may not consider a crime neither charged nor proven when it is sentencing an offender, the wrongful consideration of an uncharged offense will be deemed harmless when other factors overwhelmingly support the imposed sentence. *State v. Stambolia*, 11th Dist. Trumbull No. 2003-T-0053, 2004-Ohio-6945, ¶26.

{¶60} Here, the trial court found all three requirements for imposition of consecutive sentences under R.C. 2929.14(C)(4) satisfied. Furthermore, there is considerable evidence supporting the trial court's findings on all three requirements. In regard to the third requirement, there is no dispute that appellant has a significant prior criminal record, including convictions for trafficking in cocaine, possession of cocaine, improper handling of a firearm, having weapons while under a disability, trafficking in marijuana, and trafficking in heroin.

{¶61} Given that the trial court's decision to impose consecutive sentences could be predicated solely upon its findings under R.C. 2929.14(C)(4), even if the trial court did improperly consider an uncharged offense, the error was harmless. Thus, appellant has failed to establish that the record does not clearly and convincingly support the trial

15

court's decision to impose consecutive sentences. His fourth assignment of error is not well-taken.

{¶62} The judgment of the Trumbull County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.

16