[Cite as *State v. Robinson*, 2025-Ohio-1537.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                          :
                                        :        Case Nos. 23CA5
    Plaintiff-Appellee,                 :                 23CA6
                                        :
    v.                                  :
                                        :        DECISION AND JUDGMENT
BRIAN ROBINSON,                         :        ENTRY
                                        :
    Defendant-Appellant.                :        **RELEASED: 04/22/2025**

_____

APPEARANCES:

L. Scott Petroff, Athens, Ohio, for appellant.

Lisa Eliason, Athens City Law Director, and Justin Townley, Assistant Law
Director, Athens, Ohio, for appellee.

_____

Wilkin, J.

{¶1} This is an appeal from Athens County Municipal Court in which

appellant, Brian Robinson, pleaded no contest to resisting arrest in case number

22CRB0107-2, and operating a vehicle under the influence ("OVI") in case

number 2022TRC05790.  The trial court accepted Robinson's pleas and found

him guilty of the offenses.  The trial court suspended the jail-time sentence for

each offense on the condition that Robinson successfully complete two years of

community control.  Robinson presents three assignments of error challenging

the trial court's decision denying his motion to suppress and the effectiveness of

his trial counsel.

{¶2} In the first assignment of error, Robinson argues that the trial court

committed plain error when it found that the initial encounter with Trooper

Christopher Jewell was constitutional pursuant to the community caretaking exception. We disagree. Robinson's vehicle abruptly stopped on the side of the road and then immediately all lights turned off. The trooper observed the vehicle come to an abrupt stop after just passing the trooper on the other side of the road. The trooper suspected the vehicle was disabled and the driver needed assistance. Contrary to Robinson's assertions, the trooper's approach of the now parked vehicle on the side of the road with no lights on meets the community caretaking exception and the trooper's initial contact with Robinson was a consensual encounter.

{¶3} In the second assignment of error, Robinson argues that the trial court erred when it overruled his motion to suppress because the trooper did not have reasonable articulable suspicion to re-approach. According to Robinson, there were no new facts to support the re-approach and for the trooper to request Robinson to exit the vehicle and to perform field sobriety testing. We disagree. Trooper Jewell's initial approach upon Robinson was a consensual encounter; thus, he could rely upon the same set of facts that led to his suspicion of Robinson's impairment. And based upon the totality of the circumstances, we find that the trooper was justified in his suspicion that Robinson was driving under the influence.

{¶4} In the final assignment of error, Robinson contends his trial counsel was ineffective for failing to argue in the motion to suppress that the trooper lacked probable cause to arrest him. And this deficient performance prejudiced Robinson as the motion would have been granted since the trial court under the

lesser standard of reasonable articulable suspicion found the case "very close."

We first note that Robinson pleaded no contest, thus, he waived raising claims of

ineffective assistance of counsel that do not pertain to his plea being entered into

knowingly, intelligently and voluntarily.  But even if we consider the issue, we find

Robinson fails to demonstrate prejudice as the evidence demonstrates the

trooper had probable cause to arrest Robinson for driving under the influence.

Accordingly, we overrule Robinson's assignments of error and affirm his

judgment of conviction entries.

FACTS AND PROCEDURAL BACKGROUND

{¶5} Trooper Jewell has been employed with the Ohio State Highway

Patrol since graduating from the academy in January 2022.  His post is the city of

Athens and in December 2022, he was patrolling westbound U.S. Route 50

during his night shift.  As he was driving, around midnight, he saw a vehicle pass

him in the opposite direction, and, as he was looking in his rear-view mirror,

Trooper Jewell saw the vehicle come "to an abrupt stop, and immediately turns

its lights off."  This behavior was "out of the normal" for Trooper Jewell and he

believed the vehicle was disabled.  Trooper Jewell, thus, turned around and

approached the vehicle.

{¶6} As the trooper walked up to the vehicle to make sure that the driver

did not need assistance, he saw an unfrozen puddle of liquid that was outside the

driver's door when everything else around it was frozen.  The trooper believed

the liquid to be urine.  As the trooper continued to approach, he noticed a pizza

smell from the vehicle and saw an open box of pizza, noticed that Robinson, the

driver, was avoiding eye contact and was "very nervous."  Further, the trooper observed Robinson had bloodshot eyes and a slurred speech.

{¶7} After one minute of interacting with Robinson and determining that Robinson was not experiencing issues with his vehicle, the trooper told him "take care" and began walking back to his patrol cruiser.  However, within seconds, the trooper turned around and went back to Robinson's vehicle.  It was at this point that the trooper asked Robinson to exit the vehicle and complete field sobriety tests.  Robinson declined any field sobriety testing.  The trooper informed Robinson he was under arrest and asked him to place his hands behind his back.  Robinson did not comply and ran.  The trooper caught up with Robinson and placed him under arrest.

{¶8} Robinson was issued several citations under two case numbers.  In case number 22CRB01607, Robinson was accused of obstructing official business as a second-degree misdemeanor; resisting arrest as a second-degree misdemeanor; possession of drug paraphernalia (marijuana), as a minor misdemeanor; and possession of drugs (marijuana), also as a minor misdemeanor.  And in case number 2022TRC05790, Robinson was charged with two counts of OVI.

{¶9} The arraignment and future proceedings were held jointly.  Robinson also filed the same motion to suppress for both cases.  The State responded to the motion to suppress and a joint suppression hearing was held.  The only witness was Trooper Jewell and two videos were played during the hearing: the dash camera video from the cruiser and the trooper's body camera video.

{¶10} After the trooper's testimony and arguments by both parties, the trial court denied the motion to suppress:

> Counsel, it's fairly clear that the initial approach was the caretaking capacity of law enforcement, and I don't have any problem with him approaching and investigating with regards to why there was a sudden stop. The trooper seems to have been ready to release Mr. Robinson and turned and walked away, and then he changed his mind.
>
> . . .
>
> So bloodshot eyes, speech, nervousness, and the puddle on the highway.
>
> . . .
>
> I find this is very close, about whether or not there was enough for the stop of the second approach.
>
> . . .
>
> I'm going to find that there is not probable cause at this moment in the stop, but there is a reasonable articulable suspicion for expanding the scope.  And I will deny the motion to suppress, based on the Court's conclusion that there was a reasonable and articulable suspicion. There was no field sobriety testing.  There was an attempt to start, but there was not, and so that would not be part of any evidence that would come in if this goes to trial. I don't believe that there is anything else argued, and therefore I don't think there's anything else for the Court to rule on.

{¶11} Several days after the trial court's denial of Robinson's motion to suppress, Robinson pleaded no contest to resisting arrest and one count of OVI. The remaining offenses were dismissed.  The trial court accepted Robinson's pleas and found him guilty.  The court then proceeded to sentence Robinson to jail for each offense, 90 days and 180 days, respectively.  The trial court also imposed a $500 and $750 fine for each offense, respectively.  The trial court, however, suspended the jail time and some of the fines as long as Robinson complies with the conditions of his two-year community-control sanction for each offense.

{¶12} It is from this judgment of conviction entries that Robinson appeals.

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT PLAINLY ERRED WHEN IT HELD THAT THE INITIAL ENCOUNTER WITH APPELLANT FELL UNDER THE COMMUNITY CARE TAKING EXCEPTION.

II.   THE TRIAL COURT ERRED WHEN IT FOUND THAT REASONABLE SUSPICION EXISTED THAT WOULD ALLOW A SEIZURE FOR THE PURPOSE OF INVESTIGATING AN OVI.

III.  APPELLANT SUFFERED PREJUDICE DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS WHEN TRIAL COUNSEL LIMITED THE MOTION TO SUPPRESS AND FAILED TO CHALLENGE WHETHER THERE WAS PROBABLE CAUSE TO ARREST.

ASSIGNMENT OF ERROR I

{¶13} In the first assignment of error, Robinson maintains that the trial court committed plain error when it determined that the trooper's initial contact with Robinson was not a seizure and that the investigation was lawful pursuant to the community caretaking exception.  Robinson asserts that we should review the trial court's community caretaking exception determination under the plain error standard, because, while he failed to raise the issue in his motion to suppress, he adequately raised and argued it before the trial court.  Robinson claims there was insufficient evidence to support the trial court's findings. According to Robinson, his abrupt stopping and turning off the lights fails to support a reasonable belief that he required immediate assistance for serious injury or to avoid a loss of life.  Rather, the evidence demonstrates that the trooper activated his overhead lights making the initial encounter a seizure.

**{¶14}** The State does not address whether our review of the issue is under plain error and simply asserts that the trooper's approach of Robinson's parked vehicle was not a seizure.  The State maintains that Robinson was already parked and the encounter was consensual with the trooper acting as a caretaker.

Law and Analysis

**{¶15}** The exclusionary rule bars the use of evidence secured by an unconstitutional search and seizure.  *State v. Johnson*, 2014-Ohio-5021, ¶ 40. "[A] motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule[.]"  *State v. French,* 72 Ohio St.3d 446, 449 (1995).  Crim.R. 12(C)(3) requires that a motion to suppress be filed prior to trial. Moreover,

> Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court pursuant to division (D) of this rule, or prior to any extension of time made by the court, shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver.

Crim.R. 12(H).

**{¶16}** Robinson maintains that we should apply the plain error standard of review on whether the trial court erred in concluding that the initial encounter was constitutional pursuant to the community caretaking exception.  In order to apply plain error, we first need to determine whether Robinson forfeited the issue or whether he waived any challenge to the constitutionality of the initial encounter.

**{¶17}** "Waiver is the intentional relinquishment or abandonment of a right," whereas, forfeiture "is a failure to preserve an objection."  *State v. Payne*, 2007-Ohio-4642, ¶ 23.  "Appellate courts may consider a forfeited argument, but not a

waived one, under a plain-error analysis." *State v. Trego*, 2023-Ohio-1114, ¶ 19 (4th Dist.), citing *Payne*. Thus, we "held that an appellant's failure to file a motion to suppress and further failure to object to evidence at trial on the specific grounds raised on appeal 'results in a waiver and is fatal' to the appellant's argument on appeal that the trial court committed reversible error by not excluding the evidence." *Id*. at ¶ 20, citing *State v. Chafin*, 2017-Ohio-7622, ¶ 19 (4th Dist.).

{¶18} In the matter at bar, it can be argued that Robinson waived any challenge to the constitutionality of the initial encounter making plain error inapplicable. This is because Robinson requested the suppression of the evidence since it was obtained as a "result of an unconstitutionally prolonged detention in violation of Robinson's Fourth Amendment right[.]" Robinson continued to argue how there were no additional facts between the trooper telling Robinson to "take care" and then re-approaching and prolonging Robinson's detention. He concludes the motion maintaining that there was no reasonable articulable suspicion to extend the stop since there were no new facts.

{¶19} At the suppression hearing, Robinson's counsel objected to the State continuing to play more of the body camera video arguing:

> this is a single issue motion to suppress, which is whether there was enough evidence to prolong the detention. We've seen everything we need in order to— related to that, so everything else is beyond the scope of the actual hearing.
>                . . .
> It's that it's irrelevant to the sole issue of the hearing, which is whether there was enough facts and circumstances to prolong the detention beyond the initial interaction.

**{¶20}** Later in the suppression hearing, Robinson's counsel argued that the stop was extended without any new facts and how the trooper's observations were all based on the initial encounter and there was nothing new that warranted the trooper to turn around and go back to Robinson's car and begin an OVI investigation. Several minutes later, Robinson's counsel again reiterated that the issue is the prolonging of the stop in which he argued that once the trooper told Robinson to "take care," he already had all the factors that the trooper is claiming are the basis for the prolonging of the stop. But that the law requires additional facts, which Robinson contends did not occur here, and therefore, suppression of the evidence is warranted.

**{¶21}** As the record demonstrates, it is debatable that Robinson intentionally relinquished any challenge to Trooper Jewell's initial approach and interaction with him, thus, making plain error analysis inapplicable. However, it is also arguable that Robinson forfeited the issue by failing to include it in the motion to suppress. In that case, we must apply plain error in determining whether the trial court properly determined that the community caretaking exception applied.

**{¶22}** "The burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 2014-Ohio-4034, ¶ 16. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). In order to establish plain error, Robinson "must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *State v.*

*Mohamed*, 2017-Ohio-7468, ¶ 26, citing *State v. Barnes*, 2002-Ohio-68, ¶ 27.

"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution,

under exceptional circumstances and only to prevent a manifest miscarriage of

justice." *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

{¶23} Appellate review of a motion to suppress presents a mixed question

of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

*Id*.

{¶24} The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶25} As relevant here,

> The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury.

*State v. Dunn*, 2012-Ohio-1008, syllabus.

**{¶26}** Thus, the exception "allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community caretaking/emergency-aid stop." *Id.* at ¶ 26. And " ' [e]xigency' denotes the existence of 'real immediate and serious consequences' that would certainly occur were a police officer to postpone action to get a warrant." *State v. Pine*, 2023-Ohio-2191, ¶ 29 (4th Dist.), *appeal not accepted*, 2023-Ohio-3789, ¶ 29-31, quoting *State v. Parker*, 2018-Ohio-3239, ¶ 21 (11th Dist.).

**{¶27}** The trial court in the matter at bar found that "the initial approach was the caretaking capacity of law enforcement, and I don't have any problem with him approaching and investigating with regards to why there was a sudden stop." We find the trial court's conclusion to be factually supported by competent, credible evidence, and legally sound.

**{¶28}** Trooper Jewell was driving and saw Robinson's vehicle pass by on the other side of U.S. Route 50. The trooper continued to view Robinson's vehicle in his rearview mirror. Within seconds, the trooper saw Robinson's vehicle pull off to the side of the road, come to an abrupt stop, and "immediately turns its lights off." This was out of the normal and to the trooper, this appeared to "be a disabled vehicle." As a trooper, and in his daily operations, he renders aid to disabled vehicles that he comes across. Thus, the trooper turned around and approached Robinson's vehicle because he was concerned the driver needed assistance and to "make sure that he can get back on the roadway[.]" We find these circumstances meet the community caretaking exception.

{¶29} We also note that when Trooper Jewell approached Robinson, he was in a parked vehicle on the side of the road. " 'A consensual encounter can occur when a police officer approaches and questions individuals in or near a parked car.' " (Citations omitted.) *State v. McCarthy*, 2022-Ohio-4738, ¶ 13 (2d Dist.), quoting *State v. Schott*, 1997 WL 254141, *3 (2d Dist. May 16, 1997). The Second District Court of Appeals emphasized that "no objective justification is required for an officer to engage in a consensual encounter." *Id.* at ¶ 14, citing *Florida v. Bostick*, 501 U.S. 429 (1991). As we independently determine the trial court's legal conclusion, we can affirm the trial court's decision on other grounds. *See State v. Jones*, 2004-Ohio-7280, ¶ 43 (4th Dist.). Therefore, the initial encounter was consensual and does not violate Robinson's constitutional rights.

{¶30} Accordingly, we overrule Robinson's first assignment of error.

## ASSIGNMENT OF ERROR II

{¶31} In the second assignment of error, Robinson argues that the trooper did not have reasonable articulable suspicion to re-approach him. The trooper's reasoning was based on his observations at the initial encounter, and moreover, they do not rise to the level of reasonable articulable suspicion of impairment. The bloodshot eyes and slurred speech are the only factors that apply, since nervousness is normal behavior and the unfrozen puddle was not tested. And these two factors are insufficient to warrant arresting Robinson for driving under the influence. Moreover, Robinson maintains that the trooper was "unable to clearly and consistently describe when and what exactly elevated his initial approach to a reasonable suspicion" to request Robinson to complete field

sobriety testing and then to arrest him.  Robinson concludes by asserting that this "is the kind of inarticulable hunch that is insufficient to support a finding of reasonable suspicion."

{¶32} In response, the State contends that the totality of the circumstances demonstrate reasonable articulable suspicion to investigate Robinson's impairment.  The State points out that the trooper observed Robinson abruptly stop on the side of the road and turn his lights off; an unfrozen puddle that the trooper believed was urine next to the driver's door; Robinson avoided eye contact and was "extremely nervous;" and Robinson had bloodshot eyes and a slurred speech.  Thus, the State maintains the trooper had articulable suspicion of criminal activity.

Law and Analysis

{¶33} As we previously outlined above, review of a motion to suppress presents a mixed question of law and fact.  *Burnside*, 2003-Ohio-5372, ¶ 8. Further, as an appellate court, we accept the trial court's factual findings if they are supported by competent, credible evidence since the trial court assumes the role of trier of fact.  *Id.*  We then independently determine "whether the facts satisfy the applicable legal standard."  *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

{¶34} " 'An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment.' "  *State v. Gurley*, 2015-Ohio-5361, ¶ 20 (4th Dist.), quoting *State v. Lewis*, 2008-Ohio-6691, ¶ 14 (4th Dist.).  We reiterate that The Fourth

Amendment of the United States Constitution protects "against unreasonable searches and seizures." A traffic stop is constitutionally valid "if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

{¶35} "To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity." *State v. Kilbarger*, 2012-Ohio-1521, ¶ 15 (4th Dist.). Further, " '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. Moreover, " '[t]he existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop.' " *State v. Lask*, 2020-Ohio-1037, ¶ 17 (4th Dist.), quoting *State v. Hudson*, 2018-Ohio-2717, ¶ 15 (4th Dist.).

{¶36} We first address Robinson's assertion that the trooper extended the stop after informing him "take care" and the trooper was thus required to articulate additional facts to prolong the stop. As we previously noted in the first assignment of error, Robinson did not challenge the initial encounter. And based on the facts available for our review, Robinson was voluntarily parked on the side

of a public road.  And we previously held "[t]he mere approach and questioning of persons seated within parked vehicles does not constitute a seizure * * *, i.e., it is a consensual encounter."  *State v. Jones*, 2012-Ohio-1523, ¶ 9 (4th Dist.). Robinson continued to be voluntarily parked on a public roadway as the trooper walked away and within seconds turned around and re-approached Robinson. Thus, under the facts of this case, the trooper could rely on the same set of observations and factors to articulate the reasonable suspicion to investigate Robinson's impairment as there was no initial traffic stop that was prolonged.[1]

**{¶37}** The issue then is whether Trooper Jewell had sufficient articulable facts to support investigating Robinson for impairment.  Driving while impaired is a traffic offense that

> law enforcement officers do in fact have a duty to dispel their concerns regarding impaired drivers before concluding a traffic stop. *Village of Kirtland Hills v. Kunka,* 11th Dist. Lake No. 2012–L–095, 2013-Ohio-738, 2013 WL 792793, ¶ 26. ("Where the officer possesses a reasonable suspicion that a suspect is guilty of an OVI offense, he has the authority, if not the duty, to expand the scope of the stop to conduct further investigation regardless of whether circumstances exist, as they inevitably will, that support the conclusion that the suspect is innocent. The suspect's ultimate guilt or innocence is not the issue in an investigatory stop, but, rather, whether reasonable justification exists for continuing the search/seizure.")

*State v. Burkhart,* 2016-Ohio-7534, ¶ 19 (4th Dist.).

**{¶38}** Both parties reference the Eleventh District Court of Appeals decision in *State v. Evans*, 127 Ohio App.3d 56 (11th Dist. 1998), in which the

---

[1] "[T]he detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop."  *State v. Batchili*, 2007-Ohio-2204, ¶ 15, quoting *State v. Howard*, 2006-Ohio-5656, ¶ 16 (12th Dist.), citing *State v. Myers*, 63 Ohio App. 3d 765, 771 (2d Dist. 1990).

court "noted several factors a court should consider when reviewing the totality of the circumstances surrounding an officer's decision to administer field-sobriety tests." *State v. Coates*, 2002-Ohio-2160, *4 (4th Dist.), citing *Evans*. These factors include, but are not limited to:

> (1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably.

*Evans* at 63, fn 2.

**{¶39}** And we previously emphasized that "no single one being determinative of the issue of impairment." *State v. Greene*, 2019-Ohio-3155, ¶ 13 (4th Dist.). Thus, there is no requirement that a set number must be present to find reasonable articulable suspicion for Trooper Jewell to investigate Robinson's impairment and request administering field sobriety testing. In *State v. Russo*, the Eleventh District Court of Appeals upheld the constitutionality of an investigative OVI stop based on the presence of four of the *Evans* factors concluding:

We must look at the totality of the circumstances through the eyes of Officer Stirewalt, giving due deference to his training and experience, to determine whether reasonable suspicion existed for the officer to conduct field sobriety testing. In this case, at least four of the *Evans* factors were met. These factors, along with Officer Stirewalt's experience, established a reasonable articulable suspicion that further investigation was warranted to determine whether Mr. Russo should be arrested for OVI.

2020-Ohio-3236, ¶ 45 (11th Dist.).

**{¶40}** In the case at bar, the trial court in rejecting Robinson's motion to suppress summarized the trooper's observations at the time he requested for Robinson to exit the vehicle and complete field sobriety testing: "So bloodshot eyes, speech, nervousness, and the puddle on the highway."  This factual conclusion is supported by Trooper Jewell's testimony:

> not looking at me in the eyes, just looking around, looking at something in his car, looking at his phone. I could see his bloodshot eyes.
> . . .
> I mentioned the way he was acting was outside of how I deal with individuals on a typical disabled vehicle. I gave him no reason that, in my opinion, other than my presence, to be extremely nervous. I talked to him very calmly, and he seemed to me, it seems, out of the ordinary for a typical disabled vehicle stop. [inaudible] I could smell the pizza, so his bloodshot, glossy eyes, that and the slurred speech, and a combination of that with the urine outside the car. I just believed that— I didn't— when I checked his eyes while he was in the vehicle, I was trying to, not to impede on [inaudible] I didn't want to pull him out of the car— or, not pull him out of the car, ask him out of the car, because at that point I wanted to err on, is this more of a disabled vehicle, this is not just simply [inaudible] the combination of everything, I felt like I needed to— I [inaudible] I needed to look at everything more.

**{¶41}** Therefore, as the record demonstrates, four of the *Evans* factors are present: the time—midnight; avoiding eye contact and bloodshot/glossy eyes; slurred speech; and fidgeting with his phone.  Additionally, we have Robinson's

abrupt stopping within seconds of passing the trooper's cruiser, parking on the side of the road and turning off all lights, and being "extremely nervous." Accordingly, under the totality of the surrounding circumstances, Trooper Jewell articulated specific facts demonstrating a reasonable and articulable suspicion that Robinson was driving the vehicle while impaired.

{¶42} Wherefore, Robinson's second assignment of error is overruled and the trial court's decision denying his motion to suppress is affirmed.

ASSIGNMENT OF ERROR III

{¶43} In the third assignment of error, Robinson contends his trial counsel was ineffective for failing to argue in the motion to suppress that there was no probable cause to arrest Robinson. Robinson maintains that had his counsel argued the lack of probable cause, the motion to suppress would have been granted as the trial court found the case "very close" under the reasonable suspicion standard. Robinson declined any field sobriety tests and the only additional fact of impairment was the smell of alcohol, which is insufficient. Thus, there were no additional facts to warrant probable cause for the arrest.

{¶44} In response, the State asserts Robinson's counsel was not ineffective as he filed a motion to suppress and argued the same issues that Robinson now claims should have been argued. Further, the State argues that Robinson cannot demonstrate prejudice since the outcome would not have been different. The State contends that once the trooper had reasonable suspicion to investigate Robinson's impairment, the evidence then became clear to demonstrate probable cause for his arrest.

Law and Analysis

A.  Robinson's Plea

**{¶45}** Robinson pleaded no contest to resisting arrest and driving while under the influence and he does not challenge his pleas as being unknowingly, unintelligently, and involuntarily entered into.  We previously held that a " defendant who pleads guilty waives the right to claim ineffective assistance of counsel on appeal, except to the extent that counsel's deficient performance caused the plea to be less than knowing and voluntary."  *State v. Persons,* 2003-Ohio-4213, ¶ 11 (4th Dist.).  Other appellate district courts have extended this to no contest pleas.  The Eleventh District Court of Appeals recently reiterated:

> "This court repeatedly held that '[a] plea of guilty or no contest waives any prejudice a defendant suffers arising out of his counsel's alleged ineffective assistance, except with respect to a claim that the particular failure alleged impaired the defendant's knowing and intelligent waiver of his right to a trial.' " (Citations omitted). *State v. Armstrong,* 2017-Ohio-625, ¶ 14 (11th Dist.) quoting *State v. Bregitzer,* 2012-Ohio-5586, ¶ 17 (11th Dist.). Therefore, a no contest or guilty plea precludes claims of ineffective assistance regarding suppression issues because an offender is unable to demonstrate the prejudice necessary to support such a claim. *Id.* at ¶ 15.

*State v. Smith,* 2024-Ohio-3066, ¶ 17 (11th Dist.).

**{¶46}** Similarly, the Sixth District held that "when a defendant pleads guilty or no contest, he waives his right to assert an ineffective assistance of counsel claim on appeal except to the extent the defects complained of caused the plea to be less than knowing, intelligent, and voluntary."  *State v. Miller,* 2010-Ohio-5175, ¶ 18 (6th Dist.), citing *State v. Barnett,* 73 Ohio App.3d 244 (2d Dist. 1991).  The Second District in *State v. Pullen,* also found that Pullen's decision to plead no contest resulted in the "only other issue of ineffective assistance of trial

counsel that would be cognizable in this appeal is ineffective assistance adversely affecting the voluntariness and knowing nature" of his plea.  2008-Ohio-2894, ¶ 52 (2d Dist.).

{¶47} Because Robinson pleaded no contest and does not assert his trial counsel's representation affected his decision to enter the plea, we find that he waived the right to assert his trial counsel was ineffective for failing to argue other constitutional violations in the motion to suppress.

{¶48} Assuming arguendo that Robinson's no contest pleas did not waive his ineffective assistance of counsel argument, we nonetheless find no merit to his claim.

### B.  Ineffective Assistance of Counsel

{¶49} To demonstrate ineffective assistance of counsel, Robinson "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different."  *State v. Short*, 2011-Ohio-3641, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1988), paragraph two of the syllabus.  Failure to demonstrate either prong of this test "is fatal to the claim."  *State v. Jones,* 2008-Ohio-968, ¶ 14 (4th Dist.), citing *Strickland.*

{¶50} Robinson "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent."  *State v. Gondor*, 2006-Ohio-6679, ¶ 62, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999), citing *Vaughn v.*

*Maxwell*, 2 Ohio St.2d 299 (1965). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *Id.*, citing *State v. Davis*, 133 Ohio App.3d 511, 513 (8th Dist. 1999). To demonstrate prejudice, Robinson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶51} Counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Walters*, 2013-Ohio-772, ¶ 20 (4th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). "[T]he failure to file a motion to suppress amounts to ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made." *Id.* citing *State v. Resendiz*, 2009-Ohio-6177, ¶ 29 (12th Dist.).

{¶52} Robinson maintains his trial counsel was ineffective for failing to include in the motion to suppress a claim that Trooper Jewell lacked probable cause to arrest him for OVI. The Supreme Court of Ohio held that

> [p]robable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " (Brackets added in *Gerstein*.) *Gerstein v. Pugh*, 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), quoting *Beck* at 91, 85 S.Ct. 223.

*State v. Jordan*, 2021-Ohio-3922, ¶ 19.

**{¶53}** "An officer has probable cause to arrest a driver for OVI if all the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe that the individual had committed, or was committing, OVI." *State v. Linek*, 2024-Ohio-6127, ¶ 21 (4th Dist.). Probable cause to arrest is "less than the amount of evidence needed to prove guilt beyond a reasonable doubt in a criminal trial." *Id.*, citing *Adams v. Williams*, 407 U.S. 143, 149 (1972).

> To determine whether probable cause to arrest exists, a reviewing court should examine the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). The relevant inquiry when examining the totality of the circumstances supporting probable cause "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncrimnal [sic.] acts." *Id.* at 243-44, n.13.

*Linek* at ¶ 22.

**{¶54}** At the time Trooper Jewell placed Robinson under arrest, the following factors were present to demonstrate probable cause to arrest Robinson for an OVI offense: (1) abruptly stopping after passing the trooper; (2) parking on the side of the road and turning all lights off; (3) the time was midnight; (4) avoided eye contact; (5) was extremely nervous; (6) had bloodshot/glossy eyes; (7) had slurred speech; (8) was fidgeting with his phone; (9) had an odor of alcohol on his breath; and (10) declined field sobriety tests.

**{¶55}** We note that "evidence of erratic driving is not required to support a conviction for OVI" and instead, the State is solely required to demonstrate Robinson was impaired while driving. *Sate v. Oliver*, 2024-Ohio-4542, ¶ 39 (11th Dist.). Further, "[f]ield-sobriety tests are not required to prove an OVI conviction."

*Cleveland v. Clark*, 2024-Ohio-4491, ¶ 41 (8th Dist.), citing *Solon v. Hrivnak*, 2014-Ohio-3135, ¶ 17 (8th Dist.).

{¶56} We conclude, under the totality of the circumstances, there was probable cause to arrest Robinson for OVI, and, therefore, the inclusion of such in Robinson's motion to suppress would have been a futile act.  Thus, Robinson cannot demonstrate prejudice to support his claim for ineffective assistance of counsel.

{¶57} Accordingly, we overrule Robinson's third assignment of error.

CONCLUSION

{¶58} Having overruled Robinson's three assignments of error, we affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
　　　Kristy S. Wilkin, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**